(No. 27217.—

BENJAMIN B. MORRIS, Appellee, *vs.* THE BROADVIEW, INC.,
*et al.*, Appellants.

*Opinion filed January 18, 1944.*

JONES, MULROY & STAUB, (DON KENNETH JONES, and ERNEST F. STAUB, of counsel,) all of Chicago, for appellants.

BENJAMIN B. MORRIS, *pro se,* (DAVID I. SPARK, of counsel,) both of Chicago, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The superior court of Cook county entered an order directing the issuance of a peremptory writ of *mandamus* requiring appellants, David L. Shillinglaw and Leo L. Ginsburg, as directors of The Broadview, Inc., an Illinois corporation, and David L. Shillinglaw, Ben Gold and Leo L. Ginsburg, as trustees under a voting trust agreement relating to the capital stock of The Broadview, Inc., to permit appellee, Benjamin B. Morris, to examine and make copies of the corporate records and list of holders of certificates representing interests in the stock held by the three trustees under the stock voting trust. The Appellate Court for the First District affirmed the superior court and the case is before this court on leave to appeal.

Appellee's complaint alleges, among other matters, that he is the owner of certificates representing 152 units of beneficial interest in said voting trust and had been for more than six months prior to the date of his demand; that the voting trust agreement provides that holders of such certificates shall have the same rights with respect to the examination of the books and records of the trustees

as are provided for the shareholders of a corporation; that his purpose in demanding the privilege of examination was "proper and lawful;" and that his demand was arbitrarily and unreasonably refused.

Appellants answered admitting the demand but averred that they afforded appellee an opportunity to examine the books and make extracts therefrom, with the exception of the list of holders of certificates of beneficial interest in the stock voting trust. They deny that they owed any duty to permit an examination of such list, denied his purpose in demanding the examination was proper and lawful, and alleged, on information and belief, that appellee has improperly used information secured through a prior examination of the books and records of certain other corporations.

The controversy involves a construction of section 45 of the Business Corporation Act, (Ill. Rev. Stat. 1943, chap. 32, par. 157.45,) which provides, in substance, that (a) any person, who has been a stockholder of record for at least six months immediately preceding his demand, or who holds at least five per cent of all the outstanding stock of a corporation, shall have the right to examine, at any reasonable time or times, for any proper purpose, the books of account, minutes, and records of shareholders, and to make extracts therefrom; (b) that if any such shareholder is refused access to such books and records, for any proper purpose, he may recover a penalty of ten per cent of the value of his stock, in addition to any other remedy he may have; and, (c) that the power of any court of competent jurisdiction to compel the production of the books and records for examination, by *mandamus* or otherwise, shall not be impaired by anything contained in the section of the act, upon proof by a shareholder of proper purpose, irrespective of the time during which such shareholder shall have been a stockholder of record, and irrespective of the number of shares held by him.

Appellants contend that it was incumbent on appellee not only to allege but also to prove that his demand for examination was for a proper purpose, which he failed to do. Appellee insists, and in that contention was sustained, by the trial and Appellate courts, that the burden is on the shareholder only when he does not belong to either of the two classes mentioned in the first paragraph of section 45, and that since appellee was definitely shown to have been a shareholder for a period of at least six months immediately preceding his demand, it was not essential that he either allege or prove that his demand was for a proper purpose. He also contends that the burden was on appellants, if they chose to challenge his motives, to allege and prove, as an affirmative defense, that he was not in good faith and that the examination was sought for an improper or unlawful purpose, which appellants assumed but failed to maintain by the evidence. The issues thus presented require an interpretation of the statute, which must be according to established rules of statutory construction.

Among the primary rules of construction necessarily to be applied in this case are the following: the entire section must be read together and so construed as to make it harmonious and consistent in all its parts; (*Mechanics' Savings Institution* v. *Givens,* 82 Ill. 157;) if possible we must give meaning to each word, clause and sentence; (*People ex rel. Cameron* v. *Flynn,* 265 Ill. 414; *Ruda* v. *Industrial Board,* 283 Ill. 550;) the section should be so construed that no clause, sentence or word should be superfluous; (*Wells Bros. Co.* v. *Industrial Com.* 285 Ill. 647;) any construction that leads to any absurd consequence should be avoided, as courts will assume that no such absurdity was intended; (*People ex rel. Keeney* v. *City of Chicago,* 152 Ill. 546;) the section must be interpreted according to its intent and meaning and reasonably, so as to accomplish its general object; (*Home Ins. Co.*

v. *Swigert*, 104 Ill. 653; *People ex rel. Akin* v. *Kipley*, 171 Ill. 44;) and the history of the legislation involved may be considered, with the objects to be accomplished, in arriving at the legislative intent. *People* v. *Day*, 321 Ill. 552; *People* v. *Lloyd*, 304 Ill. 23; *Dibble* v. *Winter*, 247 Ill. 243.

At common law the stockholders of a corporation had the right to examine, at reasonable times, the records and books of the corporation. But the writ of *mandamus* would not issue as a matter of course to enforce the mere naked right or to gratify mere idle curiosity, but it was necessary for the petitioner to "show some specific interest at stake rendering the inspection necessary, or some beneficial purpose for which the examination is desired." (*Stone* v. *Kellogg*, 165 Ill. 192.) By the adoption of the General Incorporation Act of 1872, the rights of shareholders in that respect were liberalized, due to the facts outlined in *Stone* v. *Kellogg*. Section 13 of that act provided: "every stockholder in such corporation shall have the right, at all reasonable times, by himself or by his attorney, to examine the records and books of account of the corporation." By that section the right of inspection was made absolute with the only express limitation that the right should be exercised at reasonable and proper times. The shareholder was not required, under that section, to show any reason or occasion rendering an examination proper. The custodian of the books and papers could not question or inquire into the motives and purposes of the shareholder. If he had reason to believe that the shareholder's purpose was improper or illegitimate, and refused access to the books and records on that ground the burden was on him to prove it. That doctrine was consistently adhered to by this court from the early case of *Stone* v. *Kellogg*, 165 Ill. 192, until the passage of the 1933 Business Corporation Act. *Venner* v. *Chicago City Railway Co.* 246 Ill. 170; *Furst* v. *Rawleigh Medical Co.*

282 Ill. 366; *People ex rel. Hollingshead* v. *American Discount Co.* 332 Ill. 18.

In the case of *Furst* v. *Rawleigh*, 282 Ill. 366, this court approved the rule announced by the Maryland court in *Weihenmayer* v. *Bitner*, 88 Md. 523, wherein that court said: "The right is given to him, as a stockholder, by statute, and is absolute and not made to depend upon any circumstance but the ownership of the stock. It is easy to see that there might be good reasons for refusing an application,—for instance, if it were made for some evil, improper or unlawful purpose,—and if such purpose were alleged and proved the writ would be denied."

The Business Corporation Act of 1933 clearly placed definite limitations on the rights of shareholders to examine the books and records of the corporation and extended the examination to include the record of shareholders in addition to the records and books of account, as provided in section 13 of the General Incorporation Act of 1872. It also included the penalty provision for refusal of the demand, which had been added to the General Incorporation Act by the 1919 revision. The definite express limitations qualifying the absolute right of a shareholder to examine the records, incorporated in the 1933 Business Corporation Act, are: (a) the right is limited to stockholders who have held their stock for at least six months or who own and hold at least five per cent of the outstanding stock; (b) the demand must request examination at a reasonable time or times; and, (c) for proper purposes. This court recognizes the object to be achieved by the limitations, and also perceives that the same object is more effectively achieved by the limitation that the demand must be for a proper purpose. Considering the change in the statute clearly abrogating the absolute right of shareholders to a definitely limited right of inspection, the only reasonable interpretation that will afford meaning to every clause and word of the section in question is that the legislative

intent was to limit the right of examination to an allegation and proof of a specified purpose which is proper and legitimate, for the protection of the stockholder's investment.

What, then, was the legislative intent expressed in the amendment of 1941, which gives to any stockholder, irrespective of time of ownership or amount, the remedy of *mandamus* to compel access to the records, upon proof by the shareholder of proper purpose? The clause "for proper purpose" appears in each paragraph of section 45. It is inconceivable that, by the amendment of 1941, the legislature intended to render the clause referred to as superfluous in the first paragraph, as appellee would have us do. Such an interpretation would contravene one of the abovementioned primary rules of construction. It is equally inconceivable that the legislative intent was to give such effect to the 1941 amendment as to completely nullify the limitations and classification of shareholders mentioned in the first paragraph. To leave in the act a limitation in one paragraph and to completely nullify it in another would create an absurdity which we cannot assume was intended.

Another forceful reason appears for giving positive effect to the "proper purpose" clause in the first paragraph of said section 45. The second paragraph, which provides for a penalty in the event of a refusal, makes the liability run to "such shareholder," obviously referring to a shareholder coming within the classification made in the first paragraph, and the penalty is imposed only for a refusal to comply with a demand "for any proper purpose." Clearly the clause has the same meaning in both paragraphs and it could hardly be contended that a suit for a recovery of the penalty could be maintained without allegation and proof of a proper purpose for the demand.

To construe the section so that it will be harmonious in all its parts and so as to accomplish the objects of its enactment is the duty of this court. It is rendered harmonious and consistent by construing paragraph 2 as pro-

viding the penalty for only those stockholders who come within the classification mentioned in the first paragraph, leaving the owner of recently acquired stock or the holder of an insignificant amount with the remedy of *mandamus,* upon proof of good faith and proper purpose, but not affording him damages, if refused access to the records and a list of stockholders.

In the instant case appellee offered no proof of any purpose for making his demand. Having failed to prove any proper purpose for demanding the list of holders of certificates of units of interest in the stock voting trust, the court was not justified in ordering a peremptory writ of *mandamus* to compel the production of the list. While courts should be vigilant in protecting minority shareholders from exploitation by those who are their agents and trustees and who should always be held to the highest degree of fidelity to their trust, it is equally necessary that the corporate structure and the stockholders as a whole be protected against any person acquiring a single share of stock for the sole purpose of demanding a list of stockholders for the purpose of trading in such securities, as was the case in *Day & Co.* v. *Booth,* 123 Me. 443, 123 Atl. 557, 43 A. L. R. 780.

Arbitrarily withholding a list from stockholders who are interested in protecting their investment is a practice not to be tolerated by the courts under our statute. The other extreme of exercising the right of inspection for speculative or other improper purpose is equally bad. The duty of the courts is to ascertain from the facts in each case the good faith of the respective parties and apply the remedy so as to administer justice between the parties in each case.

The judgments of the superior and Appellate courts are reversed and the cause remanded to the superior court for further proceedings.

*Reversed and remanded.*