(No. 31150.—

A. RITCHIE SAWERS, Appellee, *vs.* AMERICAN PHENOLIC CORPORATION *et al.,* Appellants.

*Opinion filed November 22, 1949—Rehearing denied Jan. 12, 1950.*

CRAMPTON, J., dissenting.

WINSTON, STRAWN, SHAW & BLACK, of Chicago, (WALTER A. WADE, GEORGE B. CHRISTENSEN, and JOHN L. BEHR, of counsel,) for appellants.

CARNEY, CROWELL & LEIBMAN, of Chicago, (G. KENNETH CROWELL, MORRIS I. LEIBMAN, and KENDALL M. COLE, of counsel,) for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County awarding A. Ritchie Sawers, hereinafter referred to as petitioner, a writ of *mandamus* to enable him to copy a list of shareholders of the American Phenolic Corporation, hereinafter referred to as defendant, and assessing a statutory penalty against the individual defendants,. A. J. Schmitt and Carl V. Wisner, Jr., in the amount of $123.75, as president and secretary of the defendant corporation, because of their refusal to ·permit petitioner to copy said list. The appeal comes directly to this court on the question of the constitutionality of section 45 of the Business Corporation Act.

The petitioner is an investment broker, who is also a stockholder of the defendant corporation, holding 300 out of approximately 345,000 shares of the common capital stock of the defendant. On June 15, 1948, the petitioner demanded, through his attorneys, that he be permitted to

inspect the record of shareholders and copy the same, his purpose being to obtain names and addresses of shareholders to communicate with them concerning the present business and other affairs of the corporation and to discuss plans for the future conduct of the business.

The defendant is an Illinois corporation, organized in 1933 and engaged in the development and manufacture of precision-built parts for electrical, electronic and aircraft industries.

Prior to 1945, the defendant Schmitt was the sole shareholder of the defendant corporation. Sometime during that period of time the defendant Schmitt had set up a charitable trust, the Arthur J. Schmitt Foundation, with which the company had entered into licensing agreements for the use of certain patents in return for a license payment of 5 per cent of the net sales of. the company. At the inception of the company, these license agreements were set up with Schmitt as licensor. In 1941 and 1943, he transferred his interest as licensor to the Foundation. During the war the 5 per cent royalty payment was abated by agreement between the parties to the licensing agreements, so that the payment at the present time is something less than the 5 per cent royalty specified in the licensing agreement.

In 1945, stock of the defendant was sold to the public, Schmitt retaining 12½% interest in the corporation for himself. He was a party to a contract with the company, whereby he was employed as its president at $72,000 per year. The prospectus issued by the company at the time of the stock sale to the public not only disclosed the contract with Schmitt as to his salary, but also fully divulged the licensing agreements and the royalty payments thereunder.

On December 6, 1947, the petitioner herein purchased his stock, paying approximately $4 per share. Called on his own behalf in the trial below, the petitioner testified that

at the end of 1947 the market price of the stock was from $3\frac{7}{8}$ to $4\frac{1}{8}$. At the date of the hearing the stock value on the market was $5\frac{3}{8}$ to $5\frac{7}{8}$. In his testimony he stated that he had seen the prospectus prior to the purchase of the stock by him and that upon perusing his inventory prior to April 1, 1948, had discovered the ownership of the stock. He stated that he went back to the prospectus and checked the royalty and salary agreement but that he does not know what royalty basis is now in operation. He further admitted that he was invited to discuss the affairs of the company with its officers but had never availed himself of the opportunity. He has never asked anyone about any matters concerning the company; he did not attend the stockholders meetings, particularly that of April 19, 1948, and testified that he examined only the prospectus and some pamphlets which the company had sent to him. He felt that the royalties would cause the company to lose money but that he did not know the amount of royalties paid at the present time. He stated, when asked as to his purpose for copying the stock list, that he wanted to communicate on the earnings and the royalties and that the amount of royalty payments was too high. He further admitted that he might want to offer himself as a director but that this was not his intention at the time of the request. He merely wanted to examine the books to determine whether or not further action was necessary and wished the stock list for that purpose. He admitted also that the company had opened the books and records and the stock list to his inspection but had refused to let him copy the list of stockholders. He has made no investigation as to the standard rate for royalties throughout the industry.

The petitioner was recalled by the defendants herein and again stated he purchased the stock in December, 1947, and further stated that he had decided to copy the list of stockholders prior to March, 1948. The request of March 31, 1948, was a request to inspect the list, only, and was

not a request to copy the names thereon. On recall he stated that he had never inquired of the corporation or its officers as to any salary paid any officer and he does not know the amount of actual payment of salary to any officer, nor does he know the amount of royalties paid.

The company, on the other hand, as it appears from the testimony of its officers, indicated that the petitioner herein had been offered access to all the books and records and the stock list of the corporation and that the only refusal of the corporation was as to his request to copy the information from the list of stockholders. The company introduced exhibits, including the reports to the stockholders which indicated that the company had experienced a sudden rise in business through the war years. The record discloses that the business during these years had increased from approximately $3,700,000 in 1941 to a high of $42,788,000 in 1944. Production of the company during the years 1942 and 1945, inclusive, was almost 100 per cent war production for the United States Government. In 1946 business dropped to approximately $5,186,000 which was a result of the end of the war and the lack of government orders. A period of conversion was experienced with a loss being shown for the year 1946, but the record shows that the company has been gaining in earnings since that time.

The company, in addition to opening its books and records to the petitioner herein, has offered to mail all material or any communications from the petitioner to the stockholders at the petitioner's expense but the petitioner has not availed himself of this privilege.

On the basis of these facts the trial court held that the petitioner was entitled to a judgment in his favor and awarded him a writ of *mandamus* and further found that the defendants Schmitt and Wisner were liable to the petitioner under the provisions of section 45 of the Business Corporation Act in the sum of $123.75, being 10 per cent

of the value of the shares held by him at the time of his demand.

The appellants argue that section 45 of the Business Corporation Act is unconstitutional because it is a penal statute which is vague and indefinite and fails to set forth any definitions or standards as to what, as a matter of substantive law, constitutes proper purpose. They further allege that the petitioner did not sustain his burden of proof to establish that his purpose in seeking to copy the record of defendants' shareholders was a proper purpose, either at common law or within the meaning of section 45 of the act. They further state the trial judge erred in permitting to stand in the record, and in relying upon, the argumentative, discursive answer of the witness, unresponsive to the question asked of him as to what his intent and purpose was.

Contrarily, the petitioner argues that section 45 of the Illinois Business Corporation Act is constitutional, and the finding of proper purpose as set forth by petitioner is fully sustained by competent evidence.

Section 45 of the Business Corporation Act (Ill. Rev. Stat. 1947, chap. 32, par. 157.45) provides:

"Each corporation shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its shareholders and board of directors; and shall keep at its registered office or principal place of business in this State, or at the office of a transfer agent or registrar in this State, a record of its shareholders, giving the names and addresses of all shareholders and the number and class of shares held by each. Any person who shall have been a shareholder of record * * * for at least six months immediately preceding his demand or who shall be the holder of record of at least five per cent of all the outstanding shares of a corporation, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its

books and records of account, minutes and record of shareholders and to make extracts therefrom. A record of shareholders certified by an officer or transfer agent shall be competent evidence in all courts of this State.

"Any officer, or agent, or a corporation which shall refuse to allow any such shareholder, * * * or his agent or attorney, so to examine and make extracts from its books and records of account, minutes, and record of shareholders, for any proper purpose, shall be liable to said shareholder * * * in a penalty of ten per cent of the value of the shares owned by such shareholder, * * * in addition to any other damages or remedy afforded him by law. It shall be a defense to any action for penalties under this section that the person suing therefor has within two years sold or offered for sale any list of shareholders of such corporation or any other corporation or has aided or abetted any person in procuring any list of shareholders for any such purpose, or has improperly used any information secured through any prior examination of the books and records of account, or minutes, or record of shareholders of such corporation, or any other corporation.

"Nothing herein contained shall impair the power of any court of competent jurisdiction, upon proof by a shareholder of proper purpose, irrespective of the period of time during which such shareholder shall have been a shareholder of record, and irrespective of the number of shares held by him, to compel by mandamus or otherwise, the production for examination by such shareholder of the books and records of account, minutes, and record of shareholders of a corporation."

This section of the corporation act is a culmination of a series of statutes beginning with the act of 1872, whereby it was provided that every stockholder in a corporation should have the right at all reasonable times, by himself, or by his attorney, to examine the records and books of account of a corporation. It is to be noted that there is

no distinction given in this act between the ordinary books of account and corporate records and the list of shareholders. In 1919, the law was generally revised and a shareholder was given absolute right of access to the records and books of account of a corporation which could be enforced by a 10 per cent penalty provision, but the shareholders' list was limited for examination only for proper purposes, with no penalty attached for refusal. In 1933 the section of the statute above cited was adopted.

The defendants attack the constitutionality of this section on the grounds that it is a penal statute wherein the penalty depends on terms so indefinite, uncertain and puzzling that men of ordinary intelligence must necessarily guess at its meaning and differ as to its application, and it thus transcends due process of law. In supporting this argument, they state that this section fails to contain proper criteria or standards as to what constitutes proper purposes for the production of a shareholders' list.

The right of a stockholder at common law to examine stockholders' lists for a proper purpose has been enacted into our statute. *Doggett* v. *North American Life Insurance Co.* 396 Ill. 354.

We do not agree with the argument that section 45 of the act is unconstitutional. It is obvious, since the statute incorporates the language of the common law, that if the common law sets up a criteria or standard as to what constitutes  proper purpose for the production of shareholders' lists, the statute must be considered as being sufficiently definite to satisfy the constitution. In the *Doggett case,* discussing the meaning of "proper purpose" at common law, it was said, "A *bona fide* stockholder has a legal right of inspection when sought in good faith for a specific and honest purpose, not to gratify curiosity or for speculative or vexatious purposes, providing also the interest of such applicant is as a stockholder and is lawful in character and not contrary to the interests of the corporation."

It was further stated in that case that the purpose and motive of a stockholder, under the common law, were and are proper matters for inquiry, although the stockholder is not required to state his purpose or that his purpose is a proper one. The case further held that, "At common law, the writ would not issue as a matter of course to gratify idle curiosity but it was necessary for the petitioner to show some interest at stake or beneficial purpose for which the examination was desired." In further discussing the question of proper purpose under the common law, it was stated, "It will be seen, however, that there is now little or no distinction in this State between the common law and statutory rights. In either case a proper purpose must be shown." In *Morris* v. *The Broadview, Inc.,* 385 Ill. 228, it was said, "Arbitrarily withholding a list from stockholders who are interested in protecting their investment is a practice not to be tolerated by the courts under our statute. The other extreme of exercising the right of inspection for speculative or other improper purpose is equally bad. The duty of the courts is to ascertain from the facts in each case the good faith of the respective parties and apply the remedy so as to administer justice between the parties in each case." The purposes of communication with shareholders or trust certificate holders, and of soliciting proxies are proper ones. *Vigran* v. *Hamilton,* 321 Ill. App. 541; *Morris* v. *The Broadview, Inc.,* 385 Ill. 228; *Hohman* v. *Illinois-Iowa Power Co.* 305 Ill. App. 17.

It is evident, referring to the definitions set forth in the *Doggett case,* that a *bona fide* stockholder has a legal right of inspection in good faith where he does not seek to gratify curiosity or is not proceeding for speculative or vexatious purposes. It is also necessary that the purpose be lawful in character and not contrary to the interests of the corporation. The term itself is not subject to a variety of meanings. A proper purpose is necessarily one which seeks to protect the interest of the corporation and the

interest of the shareholder seeking the list in the interest of his ownership of stock and in the interest of the corporation. The proper purpose required by the statute, then, is one wherein a stockholder seeks information bearing upon the protection of his interest and that of other stockholders in the corporation. He must be seeking something more than a satisfaction of his curiosity and not be conducting a general fishing expedition. A mere statement in a petition alleging a proper purpose is not sufficient. The facts in each case may be examined. *Morris* v. *The Broadview, Inc.* 385 Ill. 228.

To maintain the proper purpose required by statute some effort should be made by the shareholder to determine the condition of corporate affairs of the corporation in which he is interested. This effort could be shown by attendance at shareholders' meetings, examination of the books and records of the corporation and from evidence of effort on the part of the shareholder to determine the financial situation and the character of management of the corporation in question. These requirements would seem to be inherent in the term "proper purpose," and are sufficient criteria to uphold the constitutionality of the statute.

Applying this criteria to the facts of the case at bar we find, on the admissions of the petitioner on the stand below, that prior to 1945 the corporation entered into a contract with the defendant Schmitt, whereby Schmitt was to become president of the company at a salary of $72,000 per year. Also, that prior to that time the defendant Schmitt had set up a charitable trust, approved by the Bureau of Internal Revenue and the Treasury Department, with which the company had entered into licensing agreements for the use of certain patents in return for license payments of 5 per cent of the net sales of the company. In 1945 the stock of defendant was sold to the public, and a propectus was issued showing all of the matters heretofore set forth. Petitioner states that he saw and read the

prospectus prior to purchasing his stock and that he purchased the stock on December 6, 1947. His statements of his intention as to the purpose for which he desired the stockholders' list are nebulous. He states that he never took advantage of the opportunity to inspect the books and records of the company; that he never entered into any discussions with the officers of the company; that he has never asked anyone about any matters concerning the company; that he has never attended stockholders' meetings; that he examined only the prospectus and some pamphlets which the company had sent him and that he had a feeling that the royalties and salaries paid were too high, although he did not know those amounts. He further stated that when he requested permission to copy the list of shareholders in the company he did not intend to communicate with them, but merely wished to see who was on the list and what relationship they bore to the defendant Schmitt. He stated that he had never availed himself of the offer to examine the books and records.

There is no showing whatsoever by the petitioner here that he desired to familiarize himself with the business affairs of the company. The only purpose of this suit was to force the corporation to divulge and give to him a copy of the shareholders' list. It is difficult for this court to understand what purpose the production of such list could serve the petitioner herein, insofar as the business affairs of the company are concerned. It is admitted by the petitioner that he made no investigation whatsoever incidental to his stock interest or the management of the affairs of the company. It must be noted that while, for a certain period in 1946, the earnings were down, it was fully explained by the pamphlet which the company forwarded to all shareholders indicating that losses were suffered during the period of reconversion from military supply to civilian business. It was admitted by the petitioner also that at the date of the hearing the stock value on the market was con-

siderably higher than the price at which he had purchased it and that earnings were on the increase. The record discloses a high gain for the year 1947.

We fail to see here where the criteria set forth in *Doggett* v. *North American Life Insurance Co.* 396 Ill. 354, has been satisfied. We have no showing by the petitioner herein of a request to obtain the list in good faith for a specific and honest purpose. It is more to be assumed that the petitioner herein was seeking to gratify curiosity or was seeking to obtain the stock list for speculative purposes. Under the rule in the *Doggett case,* the purpose and motives of the petitioner are, under the statute and under the common law, proper matters for inquiry. An investigation of the record discloses that the petitioner has not stated any purpose whatsoever to guide this court in determining whether his purpose is a proper one. Under the circumstances herein we must hold that the petitioner has not satisfied the rule under the common law or under the statute that he seeks the copy of a stock list for a proper purpose.

It should be further noted that the petitioner admits that he purchased his stock on December 6, 1947. His first request for examination of the books and records, and one of which he did not avail himself, was made on March 31, 1948. All actions in this case subsequent to that time are a part of a continuing effort of the petitioner herein to obtain the stock books. Section 45 of the Business Corporation Act (Ill. Rev. Stat. 1947, chap. 32, par. 157.45) provides that any person who shall have been a shareholder of record for at least six months immediately preceding his demand shall have the right to examine the books and records of the corporation, and a penalty of 10 per cent of the value of shares owned by the shareholder on the date of the request is imposed against officers of the corporation wrongfully refusing to allow such examination. The petitioner herein attempts to come within the

wording of the statute by referring to the notice of his attorneys on June 15, 1948, wherein they requested a copy of the list of shareholders. We cannot hold that the request in question is limited to the date of the second notice. The actions bringing about this lawsuit and the resulting judgment were instituted less than six months after the petitioner herein had purchased his stock. He has not brought himself within the terms of the statute providing for the imposition of such penalty, or for the delivery of the list in question. The most that can be said of the petitioner's claim herein is that he brings himself within the last paragraph of section 45, which provides that a shareholder, irrespective of the period of time during which he has held his stock, may compel by *mandamus* the production for examination of the books and records of account, minutes, and record of shareholders of the corporation. The corporation here has never refused the petitioner opportunity to examine the books, records and lists of shareholders at any time. In this cause the shareholder has not availed himself of the opportunity to ascertain any facts concerning the management of the business. Had the purpose of the petitioner here been merely the communication with other stockholders in the corporation, he could have availed himself of the offer of the corporation to mail any information to the stockholders which petitioner desired. His actions here are not indicative of sufficient interest to satisfy the meaning of proper purpose.

It is not our intention to foreclose stockholders, in proper cases, from obtaining information relevant to the affairs of the corporation in which they have ownership. Where a stockholder has made the effort to determine the affairs of the corporation and its officers have precluded an investigation, the remedy of the statute is available. He may proceed under the law in an effort to redress any wrongs he feels are being done to him and to other stockholders and may take advantage of the provisions of sec-

tion 45 of the act to obtain such information as is necessary in such proper cause to effect the redress of these wrongs.

In view of the decision we have reached in this case, it is unnecessary to discuss the other errors raised by the defendants in this appeal. Upon the record herein the judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*

Mr. JUSTICE CRAMPTON, dissenting.