George FEARS, National Pioneer Insurance Company, Jimmie Gauntt, and Marmaduke Corbyn, Jr., Plaintiffs in Error,

v.

CATTLEMEN'S INVESTMENT COMPANY and Jack Lawter, Defendants in Error.

No. 44134.

Supreme Court of Oklahoma.

March 2, 1971.

Rehearing Denied April 13, 1971.

W. A. McWilliams, Oklahoma City, for plaintiffs in error.

Pitcher, Logan & Lowry, by William H. Castor, Vinita, for defendants in error.

LAVENDER, Justice.

This appeal arises in a proceeding in mandamus involving the provisions of subsections (b) and (e) of Section 71 of the 1947 "Business Corporation Act" (18 O.S.1961, § 1.71). It is provided in subsection (b) of that section that:

> "All records specified in Section 16 of this Act, * * * shall be kept by every corporation open to inspection or examination, and to the taking of extracts or the making of abstracts therefrom, by each shareholder * * * in person or by agent or attorney, at any reasonable time, *for any proper purpose*, at the place where such records are usually kept;" (Emphasis supplied)

and subsection (e) of that section provides that:

> "Nothing herein contained shall impair the power of any court of competent jurisdiction, *upon proof by a shareholder*, or other person possessing such right, *of proper purpose*, to compel by mandamus, or otherwise, the production for examination by such shareholder, or such other person, of the books and records of a corporation." (Emphasis supplied)

The plaintiffs in error, George Fears, Jimmie Gauntt, Marmaduke Corbyn, Jr.,

and National Pioneer Insurance Company, sought a writ of mandamus to compel the defendants in error, Cattlemen's Investment Company, an Oklahoma corporation, and Jack Lawter as president of the corporation, to permit the plaintiffs, or a named attorney, to take from the stockholder records of the defendant corporation a' list of its stockholders, with their addresses, "for the proper purpose of obtaining proxies," and also sought to recover from the defendants "the penalty" provided by subsection (d) of 18 O.S.1961, § 1.71, supra. They also prayed for "such other and further relief as may be just and proper in the premises." An alternative writ of mandamus was issued thereon.

In their answer and return to the alternative writ of mandamus, the defendants admitted that each plaintiff was the record owner of shares of stock of the defendant corporation; that such a demand had been made and refused; that the defendant Jack Lawter was and is the president and chief executive officer of the defendant corporation; and that Cattlemen's Life Insurance Company (also mentioned in the petition) was and is a wholly-owned subsidiary of the defendant corporation. In addition to a general denial of all other allegations of the petition, the defendants alleged that, in truth and in fact, the plaintiffs' stated purpose is not the only purpose or the principal purpose for obtaining the list of stockholders, and that "said stated purpose of plaintiffs is not in good faith and is untrue and that their actions and requests could serve no proper purpose but that same is speculative and vexatious and contrary to the best interest of this company and its stockholders and designed to serve only the interest of the plaintiffs to the detriment of Cattlemen's Investment Company and its said stockholders."

A reply to the new matter pleaded by the defendants was not required, or allowed. 12 O.S.1961, §§ 1458 and 1459.

■ The basic question presented in the trial court and in this court is whether or not the solicitation of proxies is a "proper purpose," as that term is used in 18 O.S. 1961, § 1.71, supra, for a stockholder to demand that he be allowed to take a list of the stockholders of a corporation, with their addresses, from the stockholder records of the corporation.

The trial court answered that basic question in the negative and, based thereon, refused to grant the writ of mandamus sought by the plaintiffs. That court also held that the plaintiffs were not entitled to recover the penalty prescribed in the above statute for the defendants' refusal to permit them to take such a list of stockholders from the stockholder records of the defendant corporation. We answer that basic question in the affirmative.

We note that each of the three individual plaintiffs (one of whom was the principal stockholder in the plaintiff corporation, National Pioneer Life Insurance Company, and was its president and chief executive officer as well as being a director of that corporation) testified, positively, that his purpose in wanting the list of stockholders and their addresses was to solicit proxies from other stockholders, to insure that more than fifty per cent of the shares would be represented at meetings of the stockholders. One of the plaintiffs said "equitably" represented, and the other two said "properly" represented. We also note that it could, reasonably, be inferred from the testimony of one of the individual plaintiffs (who claimed, without contradiction, that he was the next-to-largest stockholder in the defendant corporation) that his purpose in soliciting proxies, if allowed to take a list of the stockholders, would be to attempt to gain control of the management of the defendant corporation.

Section 71 of the 1947 Business Corporation Act (18 O.S.1961, § 1.71, supra) follows the earlier Illinois inspection statute set forth in Sawers v. American Phenolic Corporation et al. (1949), 404 Ill. 440, 89 N.E.2d 374, 15 A.L.R.2d 1, except that the Illinois statute authorizes inspection

and the making of abstracts of records, upon demand therefor, only by a person who has been a shareholder of record for at least six months immediately preceding his demand, or who is the holder of record of at least five per cent of all outstanding shares of the corporation, but provides that nothing in the statute shall impair the power of any court of competent jurisdiction, upon proof by any shareholder of proper purpose, regardless of the period of time he shall have been a shareholder of record, or the number of shares held by him, to compel, by mandamus or otherwise, the production, for examination by such shareholder, of the books and records, including shareholder records, of the corporation. The same Illinois statute was also involved in Morris v. Broadview, Inc., 385 Ill. 228, 52 N.E.2d 769, and Doggett v. North American Life Insurance Company, 396 Ill. 354, 71 N.E.2d 686, hereinafter mentioned.

Our court's definition of the term "proper purpose," as it is used in 18 O.S. 1961, § 1.71, supra, is set forth in the first paragraph of the court's syllabus to Wolozyn et al. v. Begarek et al. (1963), Okl., 378 P.2d 1007. That definition is based upon statements made by the Supreme Court of Illinois in the Sawers case, as to what it had held in the Doggett case concerning the Illinois inspection statute:

"It is evident, referring to the definitions set forth in the Doggett case, that a bona fide stockholder has a legal right of inspection in good faith where he does not seek to gratify curiosity or is not proceeding for speculative or vexatious purposes. It is also necessary that the purpose be lawful in character and not contrary to the interests of the corporation. The term itself is not subject to a variety of meanings. A proper purpose is necessarily one which seeks to protect the interest of the corporation and the interest of the shareholder seeking the list in the interest of his ownership of stock and in the interest of the corporation. The proper purpose required by the statute, then, is one wherein a stockholder seeks information bearing upon the protection of his interest and that of other stockholders in the corporation. He must be seeking something more than a satisfaction of his curiosity and not conducting a general fishing expedition. A mere statement in a petition alleging a proper purpose is not sufficient. The facts in each case may be examined. Morris v. Broadview, Inc., 385 Ill. 228, 52 N.E.2d 769."

The parties hereto cite Wolozyn et al. v. Begarek et al., supra, and Panhandle Cooperative Royalty Company et al. v. McLain et al. (1959), Okl., 355 P.2d 1047, as being the only Oklahoma cases involving inspection of corporate records arising since the enactment, in 1947, of the statute that now appears as 18 O.S.1961, § 1.71, supra. We have found no other such case.

The Wolozyn case concerned a request to be permitted to examine all of the books and records of the defendant corporation (a religious corporation which this court assumed, for the purposes of that case only, was subject to the statute), and to make extracts and abstracts therefrom, but there is nothing to indicate that the solicitation of proxies was involved. That case is not in point on the facts.

The Panhandle case also concerned a request to be permitted to examine all of the books and records of the defendant corporation, specifically including the stockholder records, and to make extracts and abstracts therefrom. The plaintiffs' testimony disclosed that they wanted a copy of the list of stockholders, and their addresses, as shown on those records, to enable them to communicate with all of the listed stockholders, for the purpose, among others, of soliciting proxies. This court did not expressly hold that the solicitation of proxies was a "proper purpose," but its affirmance of the trial court's judgment granting the writ of mandamus prayed for in that case, does support the proposition that the solicitation of proxies can be a

"proper purpose" for wanting a list of stockholders.

In the Sawers case, supra, which was an action in mandamus to compel the defendants to provide, or allow the plaintiff to take, a copy of the list of stockholders of the corporation, the plaintiff was not the holder of record of at least five per cent of the outstanding shares and had not been the holder of record, for the required six-months period, of the shares he held, but, under the statute, could be granted mandamus upon proof of "proper purpose." Citing the Morris case, and two others, the Illinois court said in the Sawers opinion that "The purposes of communication with shareholders or trust certificate holders, and of soliciting proxies are proper ones." However, that court reversed the trial court's action in granting the writ of mandamus, because the record disclosed that the petitioner had not stated any purpose whatsoever to guide the Supreme Court in its determination of whether his purpose was a proper one, and had not met the requirements of the Doggett case that he wanted the list of stockholders in good faith for a specific and honest purpose, so that the court said it was just as reasonable to assume that he was motivated only by curiosity.

Evidently, the Minnesota inspection statute involved in Nationwide Corporation v. Northwestern National Life Insurance Company (1958), 251 Minn. 255, 87 N.W. 2d 671, is quite similar to the Oklahoma statute involved herein. In that case, the Supreme Court of Minnesota said, at page 679 of the Northwestern report of the case:

"It is not improper to solicit proxies for the purpose of attempting to change the management of the corporation. Consequently, it is not improper to seek inspection for the purpose of ascertaining the names and addresses of stockholders or others having voting rights in order to be able to communicate with them or to solicit proxies from them.

In that connection, that court quoted from State ex rel. G. M. Gustafson Company v. Crookston Trust Company, 222 Minn. 17, 28, 22 N.W.2d 911, 919:

"'* * * There is nothing unlawful about attempting to gain control of a corporation by lawful means. Here, no unlawful or wrongful means are alleged. A stockholder has the right as against the corporation and other stockholders to gain control of the corporation by lawful means such as stock purchases and stock control. * * * Mandamus will be granted to compel an inspection to enable a stockholder to communicate with other stockholders for those purposes.'"

See cases to same effect from other jurisdictions collected in Note 17 "Deposing Management," commencing on page 80 of 15 A.L.R.2d, and Vol. 2 "Later Case Service" A.L.R.2d supplementing Vols. 13–18 of A.L.R.2d.

We agree with the above views of the Minnesota court and hold that wanting to solicit proxies from other stockholders of a corporation is a "proper purpose," as that term is used in 18 O.S.1961, § 1.71, for a stockholder's demand that he be permitted to take a list of the stockholders of a corporation, with their addresses, from the stockholder records of the corporation, and that this is true even though the solicitation of proxies would be made with the intent of gaining, or attempting to gain, control of the management of the corporation.

In the present case, the plaintiffs' evidence discloses a specific and lawful purpose for wanting a list of the stockholders and their addresses—the solicitation of proxies, possibly for the purpose of gaining, or attempting to gain, control of the management of the corporation—which is not, of itself, contrary to the interest of the corporation or its other stockholders; and, insofar as the use of the list for that stated purpose is concerned, there is no evidence, that any of the plaintiffs was

not acting in good faith or intended to use any unlawful or improper means in soliciting proxies or in attempting to gain control of the management of the corporation.

■ However, this leaves for our consideration the defendants' affirmative defense to the effect that the plaintiffs' real purpose is not the stated purpose of soliciting proxies, but is speculative and vexatious and contrary to the best interests of the corporation and its other stockholders, and is designed to serve only the interest of the plaintiffs to the detriment of the corporation and its other stockholders.

The following matters were brought out on cross-examination of the three individual plaintiffs in the present case.

The plaintiff corporation, National Pioneer Insurance Company, is a fire and casualty company and does not write life insurance. It owns 6,000 shares of stock of the defendant corporation. The plaintiff Fears is the president of the plaintiff corporation and acted for that corporation, as well as for himself, in employing attorneys to make the demands involved herein and in bringing this action.

The plaintiff Fears, as the owner of between 30,000 and 35,000 shares of its stock, is the next-to-largest single stockholder of the defendant corporation, and feels that it is not "equitable" for one of the attorneys for the defendants, with 9,000 shares of stock, to be in control of the defendant corporation (a matter not established by the evidence). Mr. Fears had been in the insurance business for 35 to 40 years, primarily in the fire and casualty end of it, but then was the general state agent for two insurance companies licensed to write life insurance in Oklahoma. One of those companies operates in Oklahoma on a brokerage basis, with none of its broker-agents under Mr. Fears' supervision, but they place their insurance with that company through his office.

The plaintiff Corbyn owns 2,000 shares of stock of the defendant corporation. His main business is life insurance, and he had been in that business 35 to 40 years. He has no business relationship at all with the plaintiff corporation, or with the other two individual plaintiffs, and was not influenced by any one in requesting a list of stockholders of the defendant corporation. He was then the general state agent for a life insurance company, with about 25 agents of the company under his supervision.

The plaintiff Gauntt, an oil jobber, owns 2,000 shares of stock of the defendant corporation. His only connection with the insurance business is through his ownership of those shares, some stock of a life insurance company other than Cattlemen's Life Insurance Company, and some stock of the plaintiff corporation, and as a director of the plaintiff corporation.

Their cross-examination did not indicate any planned, concerted action by the individual plaintiffs, or any two of them, as to the obtaining, or use, of proxies. One of them stated that proxies would allow *him* to represent more shares than he then owned. Only one of them was asked if he had been influenced by either of the others in making his demand involved herein. His answer was in the negative.

From the defendants' evidence, it appears that there were then 2,300,000 shares of stock of the defendant corporation outstanding, with slightly more than 5,000 stockholders; that there were then 200,000 shares of stock of Cattlemen's Life Insurance Company outstanding, all owned by the defendant corporation, whose only business was the operation and management of that life insurance company; and that the insurance company had around 75 million dollars worth of life insurance policies in effect, with about 3,500 of the 5,000-plus stockholders of the defendant corporation having policies issued by the life insurance company. Both the plaintiff Lawter, who was the president, chairman of the board of directors, and chief executive officer of the insurance compa-

ny, as well as of the defendant corporation, and Glenn Dean Reid, who was the agency vice-president of the insurance company, estimated that at least 50 million dollars worth of the company's outstanding policies had been sold to stockholders of the defendant corporation or through leads furnished by them.

In addition to those two officers of Cattlemen's Life Insurance Company, two other witnesses upon behalf of the defendants, testified concerning the value and use of a list of the stockholders of an insurance company by a life insurance company, and how such a list could be used by a competitive company or agent. Summarized, the defendants' evidence on those matters was to the effect that a life insurance company's list of stockholders is valuable to that company, and would be valuable to a competitive company or agent, as a list of excellent prospects for life insurance, particularly for the type of policy then being marketed by Cattlemen's Life Insurance Company (an "investment" type policy because of dividends to policyholders), because a stockholder, as an "investor," is "pre-qualified" as an excellent prospect for life insurance and is easier to sell life insurance than the "rank-and-file" person; that, while the stockholders of an insurance company would be easier to sell its insurance than the insurance of another company, because of his established connection with the company (which is always mentioned to a stockholder being solicited by the company's salesmen), every sale to a stockholder by a competitor reduces the company's chances of selling insurance to that stockholder; and that an unethical competitor, upon finding that a stockholder was also a policyholder, could try to get that person to drop his policy and buy one from him.

The defendant Lawter said that his principal objection to the plaintiffs' getting a list of stockholders was "the feeling that they will use it in a competitive sense against our company."

In our view, this defense has no validity whatsoever unless it may, reasonably, be assumed from the facts in evidence that the plaintiffs, or some of them, intended to use the list of stockholders, or to make it available for use by others, to the detriment of the defendant corporation's only business, in the manner in which the defendants' evidence discloses the list could be used, instead of, or in addition to, using it for the "proper purpose" of soliciting proxies as the individual plaintiffs testified they intended to do. We do not think that such an assumption may, reasonably, be drawn from the facts in evidence in this case.

In the absence of any evidence indicating such intent, this court will not assume that a holder of stock of a corporation requesting that he be permitted to make a list of stockholders, with their addresses, from a corporation's stockholder records, for the purpose of soliciting prox from other stockholders, intends to use the list for a purpose which is not a "proper purpose" within the meaning of that term as used in 18 O.S.1961, § 1.71, instead of, or in addition to, using the list for the "proper purpose" of soliciting proxies from other stockholders, just because it would be possible for him to do so, to his own advantage and contrary to the interest of the corporation.

We agree with the holding of the Supreme Court of Minnesota, in Nationwide Corporation v. Northwestern National Life Insurance Company, supra, and State ex rel. G. M. Gustafson Company v. Crookston Trust Company, supra, that the fact that the information sought by a stockholder under the statute involved is of a confidential nature is not enough, in itself, to deny the statutory right of examination of records and making extracts or abstracts therefrom.

Mandamus is not a writ of right, but one resting in the sound judicial discretion of the trial court [Beatrice Foods Company v. City of Okmulgee et al.

(1963), Okl., 381 P.2d 863], and will not issue except to compel the performance of a duty imposed by law, and the duty sought to be enforced must be clear and indisputable [Goeppinger v. McIntosh, Treasurer, et al. (1962), Okl., 376 P.2d 605].

We think that the defendants' duty in this case, imposed by the provisions of 18 O.S.1961, § 1.71, supra, is clear and indisputable and that, in the circumstances disclosed by the evidence, the trial court erred in refusing to grant a writ of mandamus compelling the defendants either to furnish to the plaintiffs, at their expense, a copy of the defendant corporation's list of stockholders, with their addresses, or to permit the plaintiffs or their attorney to make such a list from the corporation's stockholder records, for the purpose of soliciting proxies from other stockholders of the corporation.

The trial court's judgment is clearly against the weight of the evidence, and contrary to law and established principles of equity, and must be reversed.

In their brief, the plaintiffs ask this court, in event of reversal, to direct the trial court to assess the penalty prescribed by the statute and also to permit the plaintiffs to amend their pleadings to include a request for damages, in addition to that penalty, and have a hearing thereon. The matter of so amending the plaintiffs' petition was not presented to, or considered by, the trial court and is not passed upon herein.

The judgment is reversed and the cause remanded to the trial court with directions to grant the writ of mandamus which should have been granted, as indicated herein, and to determine and assess the penalty, if any be found due, as provided in subsection (d) of 18 O.S.1961 § 1.71.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, BLACKBIRD, JACKSON, IRWIN and McINERNEY, JJ., concur.

HODGES, J., did not participate.