THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES S. BARKER, Defendant-Appellant.

(No. 75-7;

Third District—January 16, 1976.

Arnold L. Burke, of Chicago, for appellant.

Martin Rudman, State's Attorney, of Joliet (Kenneth Grnacek, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Will County finding defendant Charles S. Barker guilty of violating section 3—701 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, § 3—701). Defendant is alleged to have violated the Act by transporting a shipment in intrastate commerce without a valid Illinois registration. Following conviction in a bench trial, defendant was fined $15 and ordered to pay $10 in court costs. He had previously been required to pay $1400 for an Illinois license plate to continue to drive the perishable freight of citrus fruits. We are not concerned, however, with the license payment, but only with the issue as to whether the driver Charles S. Barker was guilty of violation of the section referred to.

Defendant Barker contends that he was driving as part of an interstate operation and thus did not need an Illinois base registration plate at the time. From the record it appears that on June 10, 1974, the Belford Trucking Company sent a shipment of citrus fruits from Winter Garden, Florida, to Plainfield, Illinois. The fruits were contained in a truck-trailer, which was transmitted by rail to Chicago, where it was hitched to a diesel rig driven by Barker for Belford Trucking and taken to Plainfield. At no time was the trailer opened. The truck bore a current and valid Illinois Reciprocity decal and was licensed in another State. It was stopped by the weigh station on the road to Plainfield. Barker was then prohibited from driving further until he obtained an Illinois registration plate at a cost of $1400, as we have indicated. He was also cited for violation of section 3—701 of the Illinois Vehicle Code, and it is the conviction under such section with which we are concerned.

The validity of the conviction depends upon the interpretation of section 3—402 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, § 3—402) and the rules and regulations of the Secretary of State adopted pursuant thereto, which relate to the registration of motor vehicles in Illinois. On the basis of the sections of the Act and the regulations as presented to us on appeal, it is difficult to determine specifically how the regulatory scheme applies to the specific facts in this case. We note that Rule 3—402C, adopted by the Secretary of State, provides:

> "Any motor vehicle operated upon the highways of the State of Illinois 'intrastate' shall be properly registered in and display the current and valid registration plates and card of the State of Illinois except as herein provided."

Thereafter, are definitions of "intrastate movements" and "interstate movements" together with descriptions of certain "intrastate movements" which can be made without requiring registration. From this, it appears that if Barker was making an intrastate movement which is not one of

the described exceptions to the rule of registration in Illinois, then the movement was in violation of the regulation and section 3—701.

The record in the cause before us includes a letter from the superintendent of the Secretary of State's Investigation Division purporting to quote from the rules and regulations as of August 19, 1974. Under Rule 3—402C, the definition of "intrastate movements," as quoted in the letter, would include:

> "A. Movements of a laden semitrailer and/or trailer from any terminal or dock at a rail, water or air facility within Illinois to any Illinois destination."

If this were the only regulation applicable, it would appear to clearly cover the issue before us where, although the shipment of fruits by trailer began in Florida and ended in Illinois, the portion of the trip made by truck (as opposed to rail) began at an Illinois rail terminal and went to another point of destination within Illinois.

■■ In the record, however, we find a certified copy of Rule 3—402C, dated April 17, 1974, on which date the rule was amended. The provision which we quoted previously in the letter from the Superintendent of the Investigative Division of the Office of the Secretary of State was apparently deleted by the amendment of April 17, 1974, and in its place the following provisions defining "intrastate movements" were inserted:

> "A. Transportation of property, cargo or freight from any Illinois point of *origin* to any Illinois destination.
>
> \* \* \*
>
> C. Transportation *wherein cargo or freight is loaded within Illinois* for an Illinois destination." (Emphasis added.)

From these regulations it would be apparent that only if Chicago and not Winter Garden, Florida, were considered as the "point of origin" would this provision in Section A thereof apply. The provision of section C would apply only if the transfer of the truck/trailer, unbroken, from rail to truck would be considered "loading." On the basis of the record before us, it appears that neither provision clearly covers the case before us and we find it significant that the amendment to the regulations dropped the specific language which would have clearly covered a situation such as we have before us.

We also note, under the list of "intrastate movements" which can be made by a vehicle licensed in a foreign State, as one of the exceptions to the rule requiring registration:

> "B. (b) All of the cargo or freight on the vehicle consists of cargo or freight which has an *origin* or ultimate destination *outside of Illinois*." (Emphasis added.)

It would seem that such definition would cover the cause before us

and would thus make Barker's trip a movement which could be made without Illinois plates, provided that the truck was licensed in another state and had a current Illinois reciprocity or prorate decal. (The truck was so licensed and was qualified for current reciprocity).

■■ Section 3—402A of the Act itself seems rather confusing when compared to the regulations. Intrastate transportation is defined there as:

> "* * * transportation originating at any point or place within the State and destined to any other point or place within this State * * * including any act of transportation which includes or completes a pickup within Illinois for delivery within Illinois." (Ill. Rev. Stat. 1973, ch. 95½, § 3—402A.)

From the Act alone, it would seem that Barker's trip from Chicago to Plainfield was an act which "includes or completes a pickup within Illinois for delivery within Illinois" yet we find that the legislative meaning was not clearly demonstrated by the cited language, particularly in view of the regulations adopted. From our observation of the statute and the regulations we must conclude that they do not unequivocally indicate whether or not the shipment of fruit from Chicago to Plainfield, as conducted by Barker, was required to be made by a vehicle with an Illinois base registration.

Since we are involved in a criminal proceeding, fundamental fairness and due process, the cornerstones of our judicial system, demand that laws enforced by criminal sanctions be sufficiently definite so that men of ordinary intelligence are not required to necessarily guess and differ as to their meaning (*Sawers v. American Phenolic Corp.* (1949), 404 Ill. 440, 447, 89 N.E.2d 374; 21 Am.Jur.2d *Criminal Law* § 17, at 98 (1965), where it is observed that "a conviction under a criminal enactment which does not give adequate notice that the conduct charged is prohibited is violative of due process." (*Wright v. Georgia* (1963), 373 U.S. 284, 293, 10 L.Ed.2d 349, 356, 83 S.Ct. 1240.) The underlying rule to which we have referred is based on the principle of fair play and that a person shall not be held criminally responsible for conduct which he could not reasonably understand to be proscribed. *Palmer v. City of Euclid* (1971), 402 U.S. 544, 545-46, 29 L.Ed.2d 98, 100, 91 S.Ct. 1563; *United States v. Harriss* (1954), 347 U.S. 612, 617, 98 L.Ed. 989, 996, 74 S.Ct. 808.

■■ The principle, which we have referred to, has been applied in Illinois cases to statutory provisions regarding motor vehicles (*People v. Green* (1938), 368 Ill. 242, 244, 13 N.E.2d 278; *People v. Beak* (1920), 291 Ill. 449, 452, 126 N.E. 201), and also by the Federal courts to Federal administrative regulations, the violation of which is punishable by criminal sanctions (*United States v. Mersky* (1960), 361 U.S. 431,

437-38, 441, 4 L.Ed.2d 423, 429, 431, 80 S.Ct. 459). We thus believe that the principle should be applicable to the regulatory scheme with which we are confronted. We conclude that Barker individually, as an employee-truck driver for Belford Trucking Company, could not reasonably have been expected to understand that his movement in this case, under the Act and regulations, subjected him to criminal penalties. Nothing which is stated in this opinion, however, is in any manner designed to control the issue of whether or not the license payment of $1400 was properly required to be made. We are only concerned with the individual criminal responsibility of defendant in this cause.

Nothing herein contained is to be interpreted as indicating that the State lacks power to penalize someone like Barker for driving a commercial vehicle intrastate on out-of-State plates or without compliance with local regulations. All we determine in this cause is, that if the State seeks to exercise such power, it must clearly set forth in the statute and regulations the limits of what is legal and what is not.

For the reasons stated, the judgment of the Will County Circuit Court is reversed.

Reversed.

STENGEL and BARRY, JJ., concur.