Maxwell Kunin, Appellant, v. Forman Realty Corporation, an Illinois Corporation, and Arthur M. Wirtz, Appellees.

Gen. No. 47,553.

First District, First Division.
March 23, 1959.
Rehearing denied April 27, 1959.
Released for publication May 13, 1959.

Rothbart & Rosenfield, of Chicago (J. M. Rosenfield, of counsel) for plaintiff-appellant.

Peabody, Westbrook, Watson & Stephenson, of Chicago (Edward L. Barsumian, Lowell H. Jacobson, of counsel) for Forman Realty Corporation, and Friedlund, Levin & Friedlund, of Chicago (Elmer M. Leesman, of counsel) for Arthur M. Wirtz, defendants-appellees.

JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff, as a director of defendant corporation, brought this suit against defendants for a writ of mandamus, by which he sought to obtain copies of auditor's reports for the fiscal years, 1956 and 1957. The trial court dismissed the suit and entered judgment for defendants.

Defendant Forman Realty Corporation (Forman), an Illinois corporation, owns numerous buildings in and about Chicago, has an annual income in excess of $2,000,000 and operating expenses of approximately $1,500,000. It has assets of over $9,000,000 and a book net worth of $6,500,000. Defendant Arthur M. Wirtz is president of Forman. The reports were prepared by an independent public accounting firm, and multiple copies, addressed to the board of directors, were given to Forman. Plaintiff seeks to obtain one copy for each of the two fiscal periods. Defendants were willing to allow plaintiff to see the reports and to make such notes and abstracts as he wished, but refused to give him the reports.

A subpoena was served on the auditors who prepared the reports, calling for production of the reports, information as to the number of copies delivered to defendants, the manner in which copies had been made, and to whom delivery was made. The trial court quashed the subpoena, and the auditor who had been called as a witness was prevented by the trial court from testifying on the basis of the accountant-client privilege which exists by statute in Illinois. (Ill. Rev. Stat. 1957, ch. 110½, sec. 51.) A similar subpoena served on Forman was also quashed and the action dismissed by the trial court. However, the report was identified and a photostatic copy thereof made a part of the record, to show what the court had refused to admit. Defendants have now moved to dismiss the appeal on the ground that it has become moot because plaintiff has a copy available to him in the photostat.

223

■ ■ We will first consider the motion to dismiss the appeal. It is predicated on the argument that as the reports in question are in the record and, in fact, comprise some forty pages of the printed abstract, plaintiff has what he wants and there is no need to decide the issue. This does not in our opinion make the matter moot. Plaintiff is still a director of the corporation and desires to have his rights adjudicated so that he may know the nature of his duty as well as his rights as a director. In that respect the case is certainly not moot. In fact, if we were to dismiss the case as moot, the trial court's decision might stand as an adjudication against plaintiff. LaSalle National Bank v. City of Chicago, 3 Ill.2d 375; cf. Cohen v. Schlossberg, 17 Ill.App.2d 320, 150 N.E.2d 218. A further reason for not dismissing the suit because of mootness is the fact that when the issue presented is of substantial public interest, a well recognized exception exists to the general rule. People v. Labrenz, 411 Ill. 618, and cases quoted in 132 A. L. R. 1185. Taking note of the litigation currently arising in matters of this sort, we believe that public interest requires a decision of this issue. We therefore overrule the motion to dismiss and will proceed to a consideration of the merits of the case.

■ ■ Fourteen copies of the report for 1956 were made. In 1955 nine or ten copies had been made. In 1957 only two copies were made. In 1955 copies were supplied to all directors, but in 1956 this was discontinued, although ample copies had been made. In 1957, when only two copies were made, two directors received them, and it is inferred that only two copies were made in order that those directors whom the executive officers did not desire to have copies could be refused them. There could be no sound basis for such action on the part of the executive officers. The audit of the company books was made for the board of di-

224

rectors. It was addressed to them. It is an accounting to the directors of receipts and expenditures made through the executive officers. It could be said with much more reason that some of the executive officers of the company should not be permitted to have the reports. Obviously, a report cannot be absorbed by a director at a glance or on casual study. Nor is it a document of such character or special value that it is necessary for a corporation to preserve it against scrutiny. Directors of a corporation of this sort have a duty to perform. That duty ought not to be impeded unreasonably by the executive officers. It is a simple matter to provide a director with copies, and it should be done.

It is worth noting that some corporations, in order to make clear that the report is intended for the board of directors, provide that the board itself appoint or select an auditor, comptroller or chief accountant, independent of the executive officers. How then can a director be denied a report which it appears was made for him?

But, say defendants, the report is for the board as a whole and not for the individual directors. That is, we are to think of the board of directors independently of the members thereof. This gets us into a nominalist-realist controversy comparable to that revolving about the true nature of the corporate form. That, we do not deem ourselves required to resolve. We cannot conceive of a board without individual directors. We can conceive that under circumstances it would be impractical and unreasonable for every member of a board of directors to get copies of documents, even though they were part of the company's records, and that a board member ought not to ask for nor receive them. An example is a formula such as the Coca-Cola formula. But nothing like that is involved in the instant case. The only thing that appears to be involved here is the difficulty or impracticality of the making of a copy, and in the

225

present state of the art of multigraphing, mimeographing and photostating, that is not likely to be a proper defense under any circumstances. It certainly is not in the instant case, where copies were actually made.

■ ■ When one views this matter in its true perspective, the issue centers on a determination by those who control the corporation to cast obstacles in the way of a director's study of the affairs of the corporation. That is the real issue. In a large corporation with manifold interests, it is obvious that a director's function may be thus impeded. They may put him to the expense of having photostatic copies made of various documents he feels he should be able to study. They may make it difficult for him to get photostats by putting physical restrictions on his examination, as appears to have been done in the instant case. None of these things can be tolerated by the law. If there is a genuine basis for a director's being denied this privilege, it should be asserted openly and made the basis for a legal objection. Otherwise, executive officers of a corporation and members of a board of directors must co-operate to afford equal and reasonable facilities to all members of the board in their examination of the affairs of the company. In Stone v. Kellogg, 62 Ill. App. 444, 461–3 (1895), this court said, pp. 461–2–3:

"The majority of a board of directors can not exclude the minority from knowledge of what the company is doing, or from access to its files and records.

. . .

"It is not merely the right of petitioner to examine the records and books of account of the company in which he is a director—it is his duty, if he has reason to think that they contain that, a knowledge of which, if obtained by him, will be of service to stockholders, the trustee of all of whom he is."

It is argued that under the existing Illinois statute, a report is privileged. Privileged for whom? Not the

226

accountant. It is privileged for his client. While the company probably pays the accountant's fee, the report itself, as we have said, was addressed to the board of directors, and it is to them, rather than to the executive officers, that the report was made. Thus plaintiff is in that respect the client of the accountant.

█ We have studied the various cases cited by both plaintiff and defendants. They are not specially helpful. In its precise nature, the question is new, but the principles on which our conclusion is based are so well established that the inevitable result must follow. Plaintiff is entitled to a copy of the report in question, and defendants are ordered to give it to him.

The decree is reversed and the cause is remanded with directions to the trial court to enter such an order and to require compliance therewith.

Decree reversed and cause remanded with directions.

McCORMICK, P. J. and DEMPSEY, J., concur.