**In re Deborah Kay LANE, Debtor.**

**Bankruptcy No. 97–34948–S.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Dec. 4, 1997.

Steven Paul Richards, The Boleman Law Firm, Richmond, VA, for Debtor.

James J. Burns, Williams, Mullen, Christian & Dobbins, P.C., Richmond, VA, for Creditors.

Robert E. Hyman, Richmond, VA, Trustee.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This case comes before the Court on four separate motions filed by creditors in this proceeding. Associates Commercial Corporation ("Associates") and Mercedes–Benz Credit Corporation ("Mercedes") (collectively "the Creditors") each filed both an Objection to Confirmation of Chapter 13 Plan, and a Motion for Relief from Stay against debtor Deborah K. Lane ("the Debtor"). This is a core proceeding, over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(G), (L) and 1334. Venue is proper pursuant to 28 U.S.C. § 1409. After consideration of the record, pleadings, briefs, arguments, and the testimony presented at a November 12, 1997 hearing on this matter, the Court makes the following findings of fact and conclusions of law as a supplement to an opinion rendered in open court at the close of the aforementioned hearing.

## FINDINGS OF FACT

The parties have stipulated to the most of the pertinent facts of this case. Those facts, along with additional relevant facts, are as follows. The Debtor filed for bankruptcy on July 16, 1997. At that time, she possessed two trailers and a tractor ("the vehicles"), all of which were, and continue to be, titled in the name of a corporation, Debbie Lane, Inc. ("the Corporation"), which was incorporated on August 8, 1994. The Debtor was the president and sole owner of the Corporation.[1] The vehicles are subject to security interests held by the Creditors, and the Debtor personally guarantied the obligations incurred by the Corporation. The loans made by Associates have been in default since June, 1997, and those made by Mercedes have been in default since December, 1996. The Debtor voluntarily dissolved the Corporation on August 12, 1997. The vehicles were not delivered to the Creditors upon dissolution of the Corporation, but rather the Debtor retained possession of the vehicles, and continues to use them in order to generate funds for her Chapter 13 plan. The Debtor proposes to pay the obligations owed to the Creditors through her own Chapter 13 plan, paying them 100%, but paying other unsecured creditors only 20% of their claims. The Creditors have objected to the Debtor's plan on the ground that the Debtor proposes to treat the Creditors as fully secured, despite the fact that the Debtor has no interest in the vehicles. Mercedes has, in addition, objected to the plan on the ground that the Debtor proposes to pay it only 15% interest on its claim, as opposed to the 16.73% contract rate of interest. The Creditors also seek relief from the automatic stay, alleging that the vehicles are depreciating,[2] and that the Debtor has no interest in the vehicles as they are titled in the Corporation's name and thus were supposed to be released to the Creditors upon the Corporation's dissolution.

## CONCLUSIONS OF LAW

■ The Debtor cites several cases to support her treatment of the Creditors under the plan, including *Associates Commercial Corp. v. Stevenson*, 28 B.R. 37 (Bankr. S.D.Miss.1982). In *Stevenson*, the debtor ran a "mom-and-pop" business, and took out

1. The Corporation was authorized to issue 5000 shares of stock, but no stock was ever actually issued.

2. The vehicles presently have a replacement value in excess of the outstanding balances owed on the loans.

a loan for a truck via a corporation of which he was the sole shareholder. The lending institution required him, however, to personally guaranty the loan. The debtor then experienced financial difficulties, filed for Chapter 13 protection, and attempted to satisfy the corporation's debt for the truck through his Chapter 13 plan, despite the fact that the truck was titled in the corporation's name. The court held that a loan made to the corporation in that case was tantamount to a loan to the debtor personally, and that the property secured by the loan was properly included in the debtor's Chapter 13 plan, since Chapter 13 protection should not be made unavailable to sole proprietors. While the facts in *Stevenson* superficially resemble those of the instant case, *Stevenson* differs significantly from the case at bar in that the *Stevenson* court was not dealing with assets previously belonging to a corporate entity that has since been dissolved. Under *Va. Code Ann.* §§ 13.1–745, –746, and –750 (Michie Repl.Vol.1993 & Cum.Supp.1997), upon dissolution of a corporation, claims held by creditors against the dissolved corporation must be satisfied before any remaining assets are distributed to the shareholders. The Debtor made no such satisfaction in the instant case, but rather continues to possess and use the defunct Corporation's property in her business. Because the Debtor had a fiduciary duty to turn over the vehicles to the Creditors upon her termination of the Corporation, *Stevenson* is simply not applicable. In addition, this Court respectfully declines to adopt the rationale of *Stevenson.* The Court does not find it appropriate to disregard the law of Virginia regarding legal title to vehicles, *see Travelers Indem. Co. v. Nationwide Mut. Ins. Co.,* 227 F.Supp. 958, 963 (W.D.Va.1964) ("Virginia's Motor Vehicle Act uses the certificate of title as … conclusive evidence of ownership."), nor can the Court condone the unilateral modification of creditors' rights in collateral where those creditors justifiably assumed that such collateral was held by a corporate entity.

The Debtor also argues that the Corporation should be disregarded as a business entity. In effect, the Debtor wishes to pierce her own corporate veil, as she claims that she did not fully comply with the requisite corporate formalities [3] for the corporation to have legitimately existed. If the corporate veil is pierced, argues the Debtor, the vehicles can be treated as belonging to the Debtor personally, not to the Corporation. This argument is flawed in several respects, however. First, there is no disputing the fact that a certificate of incorporation for the Corporation was issued by the Virginia State Corporation Commission ("SCC") on August 8, 1994. At that point in time, the Corporation became a proper business entity, *see Va. Code Ann.* § 13.1–621 (Michie Repl.Vol. 1993); and, although the SCC retains the power to force an involuntary termination of a corporation's existence under certain circumstances, *Va. Code Ann.* § 13.1–753 (Michie Repl.Vol.1993), it did not do so in this case. The legal existence of the Corporation, therefore, continued unaltered until the SCC issued a certificate of termination on August 12, 1997. The Debtor's argument that the Corporation was somehow legally defective is thus untenable. Moreover, the Debtor should not be permitted to utilize the corporate form on the one hand to protect herself from individual liability for the Corporation's debts, then on the other hand nullify the existence of that Corporation to avoid reckoning with the obligations incurred by the Corporation while it was a viable entity. *In re RCS Engineered Products Co., Inc.,* 102 F.3d 223, 226 (6th Cir.1996) ("The general rule is that the corporate veil is pierced only for the benefit of third parties, and never for the benefit of the corporation or shareholders." (citations omitted)); *Terry v. Yancey,* 344 F.2d 789, 790 (4th Cir.1965) ("[W]here an individual creates a corporation as a means of carrying out his business purposes he may not ignore the existence of the corporation in order to avoid its disadvantages."); *Daniels v. Powell,* 604 F.Supp. 689, 695 n. 9 (N.D.Ill.

**3.** The Debtor testified that she never held an organizational meeting after receiving her certificate of incorporation, paid her personal bills out of the corporate checking account, and did not receive a salary from the corporation, but simply used corporate funds as her own. The fact that the Corporation had its own checking account to begin with, however, weakens the Debtor's argument that for the most part she never distinguished between the Corporation and herself.

1985). Allowing debtors to pierce their own corporate veils in such situations would inject an unwanted element of uncertainty into corporate transactions, since creditors would be at a loss as to whom they were dealing. They would never be sure as to the stability of the organizations with which they transact business, nor of the underlying intent of the persons who assert the existence of corporate entities.[4] In addition, if this Court were to agree with the Debtor's approach to corporate veil-piercing which disposes of corporate liability, lenders would be loathe to accept personal guaranties for secured corporate debts for fear of having their obligations with corporations modified upon individual debtors' whims. The act of disregarding the corporate entity "is to be exercised with reluctance and caution." *In re Criswell,* 52 B.R. 184, 194 (Bankr.E.D.Va.1985). In this case, the Court would be remiss if it were to allow the veil-piercing sought by the Debtor, consequently she should not be permitted to disavow the existence of the corporation that she created.

The Debtor finally cites the case of *Branch Banking and Trust Co. v. Russell,* 188 B.R. 542 (E.D.N.C.1995), in support of the proposition that the Debtor has an "interest" in the vehicles sufficient to enable her to satisfy the Corporation's obligations through her Chapter 13 plan. In the *Branch* case, the debtors personally guarantied certain secured loans made to a corporation wholly owned by them, filed for Chapter 13 protection, and included the loans to the corporation among their debts. The creditor who made the loans to the corporation objected to the debtors' Chapter 13 plan on the ground that the debtors' unsecured liabilities exceeded the cap imposed by the Bankruptcy Code. *See* 11 U.S.C. § 109(e). The court held that the debtors, as sole owners of the corporation, had an "interest" in the collateral, thus making their indebtedness to the lender secured. Like *Stevenson,* the *Branch* case at first blush seems analogous to the

instant case. *Branch,* however, specifically dealt with the definition of "secured debt" in the context of the jurisdictional aspects of Chapter 13, and only tacitly addressed the propriety of satisfying corporate debts through individual Chapter 13 plans. More importantly, as in *Stevenson,* the *Branch* court was dealing with a still-viable corporation wholly owned by two debtors holding equity interests in such corporation, and not a debtor exercising control over a now nonexistent corporation's assets as is the situation in the case at bar. The *Branch* case is thus not controlling here.

■ Quite unlike the situations in *Stevenson* and *Branch,* the Debtor in the case at bar holds neither an equitable nor legal interest in the vehicles that would allow her to pay the secured debt incurred by the Corporation through her Chapter 13 plan. The vehicles are legally titled in the Corporation's name, and the case law cited by the Debtor does not convince this Court that such designation should be disregarded, nor that the Court should allow the Debtor to pierce the corporate veil. In addition, the Debtor has no equitable property right in the vehicles stemming from her position as stockholder in the Corporation. When she dissolved the Corporation, the vehicles should have been released to the Creditors in satisfaction of the debt incurred by the Corporation. *See Marshall v. Fredericksburg Lumber Co.,* 162 Va. 136, 147, 173 S.E. 553 (1934) ("[W]here there are existing creditors of a corporation the stockholders will not be permitted, as against those creditors, to withdraw the assets of the corporation without consideration ... We repeat that a stockholder is not entitled to a share of the capital assets of a corporation until the debts have been paid."). The Debtor is a fiduciary obligated by statute to liquidate the Corporation and distribute its assets to its respective obligees, *see Va.Code Ann.* §§ 13.1–745, –746, and thus has no interest in those assets prior to such distribution. The Court notes, however, that

---

4. The Debtor has pointed to the fact that the Creditors never made an inquiry as to the legal status of the Corporation. The Court finds that a creditor has no duty to inquire into the status of a corporate entity before making a loan to such entity, save for the rare circumstance in which

the creditor has been put on some sort of notice that further investigation is warranted. In any event, the Creditors in this case were in no way remiss in treating the Corporation as a legally operative business entity, which it indeed was at the time the loans were made to it.

although the Debtor has no interest in the vehicles, the automatic stay still prevents the Creditors from exercising their rights under state law, since the automatic stay prohibits "any act to obtain property of the estate or of property *from* the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3) (West 1997) (emphasis added). The Creditors must thus obtain relief from this Court before pursuing any state law remedies available to them.

 Given the facts and applicable law set out above, the Debtor's plan cannot be confirmed. First, the vehicles should have been returned to the Creditors upon dissolution of the corporation, and the Debtor has no other interest in the vehicles, thus precluding her from treating the Creditors as secured under her plan.[5] Her plan, therefore, has been proposed by means "forbidden by law" in contravention of 11 U.S.C. § 1325(a)(3).[6] Second, the central point of the Debtor's plan is the use of the vehicles to support the Debtor's business. Those vehicles, however, are not available to the Debtors. As the Debtor cannot use the vehicles to fund her Chapter 13 plan, it is apparent that she will be unable to make all payments under the plan as required by § 1325(a)(6). The plan is consequently infeasible and cannot be confirmed. The Creditors' objections to the plan, therefore, should be sustained.[7] Furthermore, because the loans secured by the vehicles are in default, the Creditors' motions for relief from the automatic stay should be granted. Orders in conformity herewith have been entered separately.

---

**5.** The Court notes here that payment of 100% to the Creditors in this case would discriminate against the Debtor's remaining unsecured creditors who would receive far less, and that such discrimination could be "unfair," and hence proscribed by 11 U.S.C. § 1322(b)(1). It may well be, however, that due to the unique and necessary nature of the vehicles—the income from which would aid in funding the Debtor's plan—there may be a basis for such disparate treatment that does not make it "unfair," despite the fact that the Debtor's other creditors would receive only 20% of their claims. Nevertheless, because the Debtor's plan improperly treats the Creditor's claims as secured when in fact those claims are not secured by property owned by the Debtor, the Court need not decide whether the Debtor's plan is unfairly discriminatory under § 1322(b)(1).

**6.** It is also noteworthy that the debtor, after filing her petition, unilaterally engaged in the dissolution of the Corporation through which she did business. Except upon confirmation of a plan pursuant to 11 U.S.C. § 1327, property of the estate remains property over which the Chapter 13 trustee exercises dominion and control. The Debtor's act of dissolution was taken without the knowledge or consent of the trustee, which may also be an act "forbidden by law" under § 1325(a)(3).

**7.** Mercedes failed to discuss at trial the issue of the interest rate that the Debtor proposed to pay on her obligation. Due to this omission, and the fact that other grounds exist for denying confirmation of the Debtor's plan, the Court need not rule on this particular matter.