No. 3--06--0452

_____

Filed June 29, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| CHARLES H. SEMANDE, | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit |
| Plaintiff-Appellant, | ) | McDonough County, Illinois |
| | ) | |
| v. | ) | 05--CH--31 |
| | ) | |
| NICHOLAS H. ESTES, | ) | Honorable |
| | ) | David F. Stoverink |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the Opinion of the court:
_____

Plaintiff, Charles Semande, obtained a judgment against Heartland Pottery Company in the amount of $294,340.80. After discovering that Heartland had no assets, Semande filed a complaint against defendant, Nicholas Estes, alleging that Estes was the alter ego of Heartland and, thus, liable for the judgment Semande obtained against Heartland. Estes filed a motion to dismiss plaintiff's complaint, asserting that plaintiff lacked standing to bring an alter ego action against him. The trial court granted the motion. We affirm.

In 1995, Semande and Estes entered into several written agreements for the purpose of forming a corporation, Heartland Pottery Company. Estes agreed to provide the financing necessary

for Heartland to perform a pottery manufacturing operation, and Semande agreed to be Heartland's president and chief executive officer with full responsibility for all of Heartland's operations. The parties agreed that Semande would receive a salary of $110,000 per year, plus bonuses.

According to the agreements between Estes and Semande, Estes was to be the primary shareholder of Heartland and possess 500 shares of stock in exchange for a payment of $5,000. Semande was to pay Heartland $50.00 and receive five shares of stock initially. Semande was also given the option to purchase up to 50% of Heartland's shares of stock by a specified date or all of its shares if he was terminated as president. Semande and Estes agreed to elect themselves as the only members of Heartland's board of directors.

In 1998, Heartland terminated all of its employees, except plaintiff. Soon thereafter, Semande filed an action against Heartland for unpaid salary and expense reimbursements owed to him. In 2001, Heartland was administratively dissolved by the Illinois Secretary of State for failing to file necessary reports and pay franchise taxes. Heartland has never been reinstated.

In 2002, Estes provided deposition testimony in connection with Semande's case against Heartland. At his deposition, Estes admitted that no shares of Heartland stock were ever issued to anyone, including Semande. Estes also admitted that Heartland

2

never held a formal annual meeting and executed only one corporate resolution, which allowed him to open a Heartland bank account.

The trial court entered judgment in favor of Semande and against Heartland for $294,340.80.  Semande then filed a citation to discover assets against Heartland.  Under oath, Estes testified that Heartland had no assets.

Thereafter, Semande filed a complaint against Estes, alleging that Estes was the alter ego of Heartland and should be liable for the $294,340.80 judgment Semande obtained against Heartland.  In his complaint, Semande alleged that although he held the titles of "director" and "president" of Heartland, Estes controlled all aspects of the company.  According to Semande, "Heartland was a mere facade for the [d]efendant's business operations" such that "adherence to the fiction of a separate corporate existence for Heartland would sanction a fraud and promote injustice or inequitable consequences."  Semande alleged that Estes took income and assets from Heartland and placed them in his personal accounts.

Estes filed a motion to dismiss the complaint, asserting that Semande, as an officer and director of Heartland, lacked standing to assert an alter ego action against him.  The trial court granted Estes' motion to dismiss.

Semande argues that the trial court should not have granted Estes' motion to dismiss because Semande was a director and officer of Heartland in name only and, therefore, had standing to pursue

3

his alter ego action.

In Illinois, lack of standing is an affirmative defense. Greer v. Illinois Housing Development Authority, 122 Ill. 2d 462, 494, 524 N.E.2d 561, 575 (1988). We review a trial court's dismissal order based on a lack of standing de novo. Scachitti v. UBS Financial Services, 215 Ill. 2d 484, 493, 831 N.E.2d 544, 549 (2005).

A corporation is a legal entity separate and distinct from its shareholders, directors, and officers. In re Rehabilitation of Centaur Insurance Co., 158 Ill. 2d 166, 172, 632 N.E.2d 1015, 1017 (1994). However, a court may find corporate officers, directors or shareholders personally liable for corporate obligations through a remedy known as piercing the corporate veil. People v. V & M Industries, Inc., 298 Ill. App. 3d 733, 739, 700 N.E.2d 746, 750 (1998). Piercing the corporate veil is an equitable remedy invoked to assist third parties who have been defrauded. See Crum v. Krol, 99 Ill. App. 3d 651, 661, 425 N.E.2d 1081, 1088 (1981).

A corporate entity will be disregarded, and the corporate veil pierced, where the corporation is an alter ego or business conduit of the governing or dominant personality. V & M Industries, 298 Ill. App. 3d at 739, 700 N.E.2d at 751. The alter ego doctrine was developed for and has historically been used by third persons injured by their reliance on a distinct corporate entity. Centaur Insurance Co., 158 Ill. 2d at 173, 632 N.E.2d at 1018; see also

4

<u>Sinquefield v. Sears Roebuck and Company</u>, 209 Ill. App. 3d 595, 598, 568 N.E.2d 325, 327 (1991).  According to the supreme court:

> "The doctrine of alter ego fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his or her own personal business, and such liability arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation.  The corporate form may be disregarded only where equity requires the action to assist a third party." <u>Centaur Insurance Co.</u>, 158 Ill. 2d at 173, 632 N.E.2d at 1018, quoting 1 W. Fletcher, Private Corporations §41.10, at 615 (rev. ed. 1990).

Piercing of the corporate veil is limited to protecting those who have relied on the existence of a distinct corporate entity.  See <u>Centaur Insurance Co.</u>, 158 Ill. 2d at 173-74, 632 N.E.2d at 1018. The corporate veil will generally not be pierced for the benefit of a corporation or its stockholders.  See <u>Centaur Insurance Co.</u>, 158 Ill. 2d at 173, 632 N.E.2d at 1018.  The rationale for this prohibition is that "[a] party should not be allowed to utilize the corporate form on the one hand to protect himself or herself from liability for a corporation's debts, and then on the other hand to nullify the existence of the corporation to avoid reckoning with the obligations incurred by the corporation

5

while it was a viable entity." 18 C.J.S. Corporations, §20 (2007), citing In re Lane, 215 B.R. 810, 812 (E. D. Va. 1997). When shareholders have deliberately adopted the corporate form to obtain its advantages, they will not be allowed to disregard the corporation's existence for their benefit. See Schenley Distillers Corp. v. United States, 326 U.S. 432, 437, 66 S. Ct. 247, 249, 90 L. Ed. 181 (1946); Board of Transportation v. Martin, 296 N.C. 20, 29, 249 S. E. 2d 390, 396 (N.C. Sup. Ct. 1978).

While no Illinois authority has expressly ruled that directors may not pierce the corporate veil for their benefit, we believe that the rationale for prohibiting shareholders from piercing the corporate veil applies equally to directors. Like shareholders, directors are generally not personally liable for a corporation's obligations. See Jacobson v. Buffalo Rock Shooters Supply, Inc., 278 Ill. App. 3d 1084, 1088, 664 N.E.2d 328, 331 (1996). Giving directors the ability to pierce the corporate veil would improperly allow them to hide behind the corporate veil when it benefits them and then discard it when it is no longer useful. C.f. Schenley Distillers Corp., 326 U.S. at 437, 66 S. Ct. at 249, 90 L. Ed. 181 (one who has created a corporate arrangement to carry out his business purposes does not have the choice of disregarding the corporate entity).

Moreover, directors should be precluded from piercing the corporate veil because, like shareholders, they are not innocent

6

third party creditors. In order to fulfill their fiduciary duties to the corporation and its shareholders, directors have a right and responsibility to obtain information about the corporation that they serve. See Drake v. Newton Amusement Corp., 123 N.J.L. 560, 9 A.2d 636 (N.J. Sup. Ct. 1939); Cohen v. Cocoline Products, Inc., 309 N.Y. 119, 127 N.E.2d 906 (N.Y. App. Ct. 1955). To that end, directors may compel inspection of a corporation's books and records. See Kunin v. Forman Realty Corp., 21 Ill. App. 2d 221, 157 N.E.2d 785 (1959); Stone v. Kellogg, 62 Ill. App. 444 (1895). A director is chargeable with knowledge of the facts that corporate books and records disclose. See F.H. Hill Co. v. Barmore, 220 Ill. App. 222 (1920).

Furthermore, a director's right to inspection is even broader than a shareholder's. See O'Neal v. Home Town Bank of Villa Rica, 237 Ga. App. 325, 514 S.E.2d 669 (Ga. App. Ct. 1999). Directors have an "absolute" and "unqualified" right to examine books and records (18A Am Jur. 2d Corporations § 297, at 170 (2d ed. 2004)), while shareholders may only examine corporate books for a "proper purpose" (805 ILCS 5/7.75(c) (West 2006)). Thus, directors have the ability to determine the financial condition of the corporation and do not need the equitable protection afforded to third party creditors who may have been injured.

Here, the trial court found as a matter of law that, as a director of Heartland, Semande had no standing to pierce

Heartland's corporate veil. We agree. As a director, Semande had an obligation to obtain information about the corporation that he served. See Drake, 123 N.J.L. 560, 9 A.2d 636; Cohen, 309 N.Y. 119, 127 N.E.2d 906. Thus, he did not stand in the position of an innocent third party creditor and should not be allowed to employ the equitable doctrine of piercing the corporate veil. See Centaur Insurance Co., 158 Ill. 2d at 173, 632 N.E.2d at 1018. The trial court properly dismissed Semande's complaint for lack of standing.

The judgment of the circuit court of McDonough County is affirmed.

Affirmed.

WRIGHT, J., concurs.

JUSTICE HOLDRIDGE, dissenting:

The only information used by the majority to ascertain Semande's status comes from agreements drawn up by the parties at the inception of the corporation. But Semande claims that the agreed-upon relationship did not exist in practice. There is no evidence of record rebutting this claim. In fact, Estes gave deposition testimony indicating that no shares of stock were ever issued to Semande, and that Semande never participated in corporate meetings in any capacity because no meetings were ever held. Considering the nature of Semande's claim, I believe the record

8

contains insufficient facts to support dismissal at this stage.  I thus respectfully dissent.