2019 IL App (1st) 172966

THIRD DIVISION
January 16, 2019

No. 1-17-2966

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| BARBARA MUNROE-DIAMOND and SALLY SHARKEY, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellees, | ) ) | Cook County |
| v. | ) ) | 16 CH 12292 |
| JAMES P. MUNROE and MICHAEL F. MUNROE, | ) ) ) | Honorable Rodolfo Garcia |
| Defendants-Appellants. | ) ) | Judge Presiding |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     The question here involves the right of a corporate director in Illinois to demand inspection of corporate books and records. Is the right unqualified? Need the director have a legitimate purpose? And which side bears the burden of proof? No statute answers the question, and the case law is surprisingly sparse.

¶ 2                                    BACKGROUND

¶ 3     The parties to this appeal are siblings and the shareholders and directors of the Pickens-Kane Moving and Storage Company (Company).

- 1 -

¶ 4    In winter 2013, the board of directors hired Ft. Dearborn Partners, Inc. (the Valuator) to provide a fair market valuation of the Company's stock. The next summer, the Valuator issued a report opining that the Company's stock was worth $3158 per share for controlling shares and $1522 per share for minority shares. Defendants (the Brothers) owned controlling shares; plaintiffs (the Sisters) owned minority shares.

¶ 5    Due to the valuation, the board of directors unanimously authorized the Company to redeem minority shares for $1522 per share. In early 2015, following some price negotiation, the Company paid $1660 per share for minority shares. The Sisters were the only minority shareholders who did not redeem their stock. The four parties here are the only remaining shareholders in the Company and each is on the board of directors.

¶ 6    On July 5, 2016, the Sisters made a "demand upon the Corporation to make available for inspection and copying any and all documents (including electronic data) pertaining to each and every one of the following categories." The demand listed 24 categories including the Corporate Minute Book, stock certificates, lists of assets and liabilities, etc. The Brothers refused to comply with this demand because "no purpose was put forward as to why [the Sisters] need such documents, nor how these documents relate to their duties as directors."

¶ 7    A week later, the Sisters made a second demand. They believed the Brothers' refusal was "without merit because it is inconsistent with Illinois law *** and 'Directors have an 'absolute' and 'unqualified' right to examine [the corporation's] books and records." Again, the Brothers refused to produce, but this time tried to negotiate a sale price in lieu of production. The Sisters tried to reach a settlement, but the Brothers "rejected [it] in its entirety." The Sisters made a final demand, to some avail. The Brothers rejected a complete production, but they did agree, "in the spirit of good faith and cooperation," to produce a limited amount of the documents requested.

¶ 8      The Sisters filed this mandamus action a week later. The Brothers filed an answer, denying that they refused to allow access to corporate records. As affirmative defenses, the Brothers claimed "this litigation was commenced for the sole and exclusive purpose of forcing the Defendants to either purchase the Plaintiffs' stock at an excessive premium, or forcing the Corporation to liquidate, close its doors and put over 100 employees out of a job." In their eyes, the Sisters were angry that their minority shares weren't worth as much as the Brothers' controlling ones. The Brothers claimed the requests were "overbroad, unduly burdensome and disproportionate requests for documents for the sole purpose of harassing Defendants and not for a good faith purpose in [their] role as Director of the Corporation."

¶ 9      The Sisters moved to strike the affirmative defenses and for judgment on the pleadings. The circuit court entered an interim order requiring the Brothers to allow access to the books. The court entered and continued the motion pending further argument on how to protect customer information stored at the same location as the corporate records. After additional briefing, the court entered its final mandamus judgment. The trial court found that "Plaintiff directors have an absolute and unqualified right to examine the books and records of the Corporation *** [and] the Defendants as both officers and directors of the Corporation are in actual control and have a duty to cooperate and afford the Plaintiff directors equal and reasonable access in their examination of corporate affairs." As for the affirmative defenses, it found they "do not allege facts that are relevant to the Plaintiffs' efforts to inspect corporate books and records and property, and thus do not state valid defenses to the Mandamus action." Finding no genuine issue of material fact on the pleadings, the court entered judgment in favor of the Sisters.

¶ 10                                 ANALYSIS

¶ 11    The Brothers argue that their affirmative defenses should not have been stricken, that questions of fact precluded judgment on the pleadings, and that compliance with the interim order mooted the mandamus claim. Primarily, they contend that, because they allowed access to some of the records there is a question of fact about whether they "denied" the Sisters access. This argument is based on the view that a director's right to corporate records must be related, in some way, to her official duties as a director. The Sisters argue that limiting access to records *is* denying access, because they have an absolute and unqualified right to access corporate records.

¶ 12                                  I

¶ 13    As we will see, a pivotal question here is whether a corporate director has the unqualified right to examine corporate books and records, or whether that right is qualified by the director having a "proper purpose" for doing so—and if it's the latter, which party bears the burden of proof on the question. We start with a little history—on the rights of corporate *shareholders*, not directors. Our decision does not concern shareholders, but the comparison will prove helpful.

¶ 14    At the common law, shareholders had the right to inspect the records and books of the corporation, but the shareholder had to show a specific interest or proper purpose—beyond idle curiosity—to justify the inspection. *Morris v. Broadview, Inc.*, 385 Ill. 228, 232 (1944). With the enactment of the General Incorporation Act of 1872 (see Ill. Rev. Stat. 1874, c. 32, § 13), the common law was abrogated; the consideration of a "proper purpose" was not eliminated, but the burden shifted—the shareholder was no longer required to demonstrate a proper purpose for the inspection on the front end, but the corporation could deny access if it carried the burden of demonstrating an improper purpose. *Morris*, 385 Ill. at 232; *Stone v. Kellogg*, 165 Ill. 192 (1896). The burden shifted back with the passage of the Business Corporation Act of 1933,

which placed certain limitations on the shareholder's right to inspect, including that the inspection be for "proper purposes." *Morris*, 385 Ill. at 233. That remains the case today: the Business Corporations Act of 1983 likewise provides a shareholder's right to inspect corporate books, "but only for a proper purpose." 805 ILCS 5/7.75 (West 2016); see *ICD Publications, Inc. v. Gittlitz*, 2014 IL App (1st) 133277, ¶ 86.

¶ 15     But there is no corresponding legislative provision for corporate directors, nor, so far as we can discern, has Illinois ever had one. That leaves us only with the common law—court decisions construing the corporate director's right to inspect records. They are surprisingly few in number.

¶ 16     We start with an 1895 decision from the appellate court, cognizant that it has no binding authority. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 95 (1996) ("Appellate court decisions issued prior to 1935 had no binding authority."). But it was followed by a supreme court decision affirming it—which, of course, *is* binding authority—and it provides much-needed context.

¶ 17     In *Stone v. Kellogg*, 62 Ill. App. 444, 463 (1895), we held that Kellogg, a corporate director (and shareholder), had the right to inspect corporate books and records. In making his request to Central Union Telephone Company, a request he incorporated into his complaint, Kellogg meticulously cited what he believed to be pervasive conflicts of interest and self-dealing between Central Union and its parent company, which profited the parent to the expense of Central Union. *Id*. at 446-54. He added that he sought access to various books as records both as director and shareholder of Central Union, that he had no interests adverse to the company, only to secure "honest and efficient management," and that he was willing to conduct his examination during reasonable business hours. *Id*. at 454, 456.

¶ 18    When the company denied him the full access he requested, Kellogg sought a writ of mandamus. In answering the writ, the corporation claimed that Kellogg had no interest in ascertaining facts that he was "legitimately entitled to know," but rather "to discover some possible ground of attack upon said company and its management, contrary to the interests of said company, and for the private advantage of the petitioner." *Id.* at 460. It claimed that it never denied Kellogg access to those documents he was "lawfully entitled to examine." *Id.* Kellogg filed a demurrer to the answer, and the trial court sustained it, granting him full access.

¶ 19    We affirmed. We rejected the notion that the corporation had the right to withhold documents or to decide "how much of the records and affairs of the company all or any of its directors may legitimately 'know.' " *Id.* at 461.  We said:

> "It is not merely the right of petitioner to examine the records and books of account of the company in which he is a director—it is his duty, if he has reason to think that they contain that, a knowledge of which, if obtained by him, will be of service to stockholders, the trust off all of whom he is.
>
> * * *
>
> The fact that a director is suspicious that affairs are not properly or judiciously managed, is a reason why he should investigate; nor are we able to perceive any good reason why a suspicious stockholder can be turned aside with the answer that his suspicion is a mere caprice or his motives bad." *Id.* at 463.

¶ 20    Our supreme court affirmed. *Stone v. Kellogg*, 165 Ill. 192 (1896). The court opened, one introductory sentence aside, with this passage:

> "[Kellogg] is both a stockholder and a director in the company. As a stockholder owning more than $75,000 at its face value of the capital stock he had large interests to

protect, and *as a director he had important duties to perform*. In *both* capacities he had the undoubted right to inform himself (and, if necessary, by examination of the records, books, and papers of the company at reasonable and proper times) as to the affairs and condition of the company for the better protection of his own interests and the performance of his duties. The petition was amply sufficient, and, *unless it can be said that the answer showed sufficient reason for refusing the writ*, the judgment of the courts below granting it must be affirmed." (Emphases added.) *Id*. at 203-04.

¶ 21    The court then devoted nearly its entire substantive discussion to Kellogg's rights as a shareholder (we might presume because far more decisional law had developed on that question). See *id*. at 204-07. In any event, the court then wrote: "As a director and stockholder, [Kellogg] was legitimately entitled to know anything and everything which the records, books, and papers of the company would inform him, so far as anything in the answer shows to the contrary." *Id*. at 206. For that proposition, the court cited *People ex rel. Muir v. Throop*, 12 Wend. 185, 1834 WL 2986 (N.Y. Sup. Ct. 1834), in which the New York court ruled that a corporate *director* had the right to inspect the corporate books. Our supreme court then found that "[t]here was no sufficient allegation in the answer *** *that the object and purpose of the petitioner was not legitimate, or was to injure the corporation*. It is no sufficient answer to such a petition to impugn the motives of the petitioner." (Emphasis added.) *Stone*, 165 Ill. at 206.

¶ 22    While it's fair to say that this brief decision focused more on shareholders than it did on corporate directors, the supreme court clearly applied its reasoning to both shareholders and directors equally, saying so at the beginning and near the end of the opinion, and citing the *Throop* case that dealt solely with corporate *directors*. There is no reasonable way to interpret the

*Stone* decision otherwise. As of that decision in 1896, corporate directors had the same rights of inspection as shareholders—no more, no less.

¶ 23     So that means that, as of 1896 at least, both shareholders and corporate directors had the presumptive right to inspect any and all corporate records, "unless it [could] be said that the answer show[ed] sufficient reason for refusing the writ." *Id.* at 203-04. That is, the right was not unqualified, but presumptive—the burden was on the corporation to demonstrate a "sufficient reason" for refusing the writ, namely that the "object and purpose" of the inspection "was not legitimate" or was "to injure the corporation." *Id.* at 206.

¶ 24     That's consistent with everything we know about shareholders' rights at the time, and consistent with how the supreme court explained that history 48 years later in *Morris*, as we discussed above. No statute provided for corporate directors' inspection rights in 1896—nor does one today—but a statute did exist regarding *shareholder* inspection rights—section 13 of the General Incorporation Act of 1872. See *id.* at 204-05 (referencing statute). That provision did *not* require that the shareholder provide a proper purpose for requesting inspection on the front end. See *Morris*, 385 Ill. at 232 ("The shareholder was not required, under that section, to show any reason or occasion rendering an examination proper.").

¶ 25     But as *Morris* explained, the supreme court's *Stone* decision added a judicial caveat to that shareholder right: if the corporate custodian "had reason to believe that the shareholder's purpose was improper or illegitimate, and refused access to the books and records on that ground[,] the burden was on him to prove it." *Id.* That rule, said the court in *Morris*, "was consistently adhered to by this court from the early case of *Stone v. Kellogg*, 165 Ill. 192 *** until the passage of the 1933 Business Corporation Act." *Id.* And as we've said, what was true for shareholders under *Stone* was true for directors—the same test—even if the shareholder's

inspection right was a combination of statute and judicial caveat, while the director's right was borne purely of common law.

¶ 26    So that's where we stood from 1896 to 1933: directors and shareholders had a presumptive right to inspect corporate books and records, per *Stone*, and the burden was on the corporation to prove that the purpose of the director or shareholder was improper. Of course, as we've explained already and as *Morris* noted, for shareholders, that rule changed with the new Business Corporations Act of 1933, which shifted the initial burden back on the shareholder, who had to demonstrate "proper purposes" for the inspection of corporate documents. *Morris*, 385 Ill. at 233. And it remains that way today. See 805 ILCS 5/7.75 (West 2016) (shareholder may inspect corporate records "but only for a proper purpose").

¶ 27    But for corporate directors? The rule never changed. No statute exists, or as far as we can tell, ever existed, abrogating the common law. And no supreme court decision has overruled its *Stone* decision. So for corporate directors, what was true in 1896 is true today:  In Illinois, corporate directors have the presumptive right to inspect corporate books and records, and the burden falls on the corporation to show that the request is for an improper purpose.

¶ 28    Since 1896, two appellate decisions have addressed the inspection rights of corporate directors. One of them, we think, could be reconciled with *Stone*.  One of them cannot.

¶ 29    Sixty-three years after *Stone*, we held that a corporate director, Kunin, was entitled to a writ of mandamus to obtain copies of the corporate auditor's reports for 1956 and 1957. *Kunin v. Forman Realty Corp.*, 21 Ill. App. 2d 221, 227 (1959). The auditing reports were made for the directors; they were addressed to them. *Id*. at 224-25. But the corporation only made two photocopies of the 1957 report and 14 copies of the 1956 report. *Id*. at 224. The corporation offered to let Kunin see the reports and take notes, but he couldn't keep them. *Id*. at 223.

¶ 30    We reversed the trial court and remanded for an entry of the writ. The law could not "tolerate[]" that an auditing book would be kept from a corporate director—the very person for whom it had been prepared. *Id*. at 226. Instead, "executive officers of a corporation and members of a board of directors must cooperate to afford equal and reasonable facilities to all members of the board in their examination of the affairs of the company." *Id*. For this reasoning, we relied on the decision of the appellate court, not the supreme court, in *Stone*.

¶ 31    We did leave room for the possibility, however, that there might be a "genuine basis for a director's being denied this privilege," though we said "it should be asserted openly and be made the basis for a legal objection." *Id*. There, one basis had been claimed—an accountant-client privilege, which we easily rejected because, of course, Kunin *was* the client. *Id*. at 227. We also "conceived" that it might be unreasonable to request inspection of certain documents, "such as the Coca-Cola formula." *Id*. at 225.

¶ 32    *Kunin* is a rather silly case on its facts, given the ludicrous position of the corporation, but even though it never mentioned the supreme court decision in *Stone*, it is consistent with it. We allowed for the possibility of a "genuine basis" for denying the director's right to inspect corporate documents—another way of saying that the director's inspection rights were not unqualified. An appellate decision couldn't overrule a supreme court decision in any event, but for what it's worth, the rule remained intact, if stated slightly differently in *Kunin*: the corporate director had the presumptive right to inspect corporate documents, and the corporation bore the burden of establishing that the request was for an illegitimate or improper purpose.

¶ 33    But forty-eight years later, in 2007, in *Semande v. Estes*, 374 Ill. App. 3d 468, 472 (2007), we wrote this:

"[A] director's right to inspection is even broader than a shareholder's.

See *O'Neal v. Home Town Bank of Villa Rica,* 237 Ga. App. 325, 514 S.E.2d 669 (Ga.

App. Ct. 1999). *Directors have an "absolute" and "unqualified" right to examine books*

*and records* (18A Am Jur.2d *Corporations* § 297, at 170 (2d ed.2004)), while

shareholders may only examine corporate books for a "proper purpose" (805 ILCS

5/7.75(c) (West 2006))." (Emphasis added.)

¶ 34     We should first point out that this language above bordered on *dicta*. The question in

*Semande* was whether a corporate director could pierce the corporate veil; the court held that it

could not, and gave many reasons for that holding, including that shareholders can't pierce the

corporate veil, and because directors have (in the court's words) an even broader power to

inspect documents, they thus "have the ability to determine the financial condition of the

corporation and do not need the equitable protection afforded to third party creditors who may

have been injured." *Id.*

¶ 35     In any event, essential to the court's holding or not, this statement of the law cannot be

reconciled with the supreme court's *Stone* decision. Under *Stone*, the director's inspection right

can be rebutted if the corporation carries its burden of proving an improper purpose.  It is not, as

*Semande* wrote, an "absolute" or "unqualified" right. To that extent, *Semande* is incorrect.

¶ 36     Here, the Sisters cite *Semande* for that very proposition, that as corporate directors, they

have the absolute and unqualified right to examine books and records. So did the trial court, in

entering judgment on the pleadings in the Sisters' favor. For the reasons stated, we disagree and

reject *Semande* on this proposition of law.

¶ 37     We should not be understood as holding that the inspection rights of directors and

shareholders are entirely coextensive. They are not. For one, as noted, shareholders must

establish a proper purpose as a precondition to inspection, and they carry the burden of proving a proper purpose in a court action. See 805 ILCS 5/7.75(b), (c) (West 2016). But the opposite is true for corporate directors, who have a presumptive right that must be rebutted, by proof of an improper purpose, by the corporation.

¶ 38    And that's not the only difference. Shareholders are only entitled to certain records of the corporation. See 805 ILCS 5/7.75(b) (West 2016) (shareholders may inspect "the corporation's books and records of account, minutes, voting trust agreements filed with the corporation and record of shareholders ***"). As there is no statutory provision governing directors' inspection rights, there is likewise no statutory limitation on the books and records they may request.

¶ 39    After all, courts have recognized that corporate directors have "important duties to perform." *Stone*, 165 Ill. at 203. Indeed, " '[d]irectors owe a fiduciary duty to their corporations and to their shareholders.' " *Illinois Non-Profit Risk Management Ass'n v. Human Services Center. of South Metro-East*, 378 Ill. App. 3d 713, 727 (2008) (quoting *Stamp v. Touche Ross & Co.,* 263 Ill. App. 3d 1010, 1015 (1993)); accord *Kovac v. Barron*, 2014 IL App (2d) 121100, ¶ 64. Thus, " '[i]t is not merely the right of [a director] to examine the records and books of account of the company in which he is a director—it is his duty.' " *Kunin*, 21 Ill. App. 2d at 226 (quoting *Stone*, 62 Ill. App. at 463). So while the standard of a "proper purpose" is relevant to the inspection rights of both shareholders and directors, what is "proper" for a corporate director and what is "proper" for a shareholder may not always be the same.

¶ 40    In sum, the inspection right of corporate directors in Illinois remains the same as it was in 1896, when our supreme court last spoke on the issue in *Stone*. The Sisters, as corporate directors, have a presumptive right to inspect the corporate books and records, unless the Brothers can carry their burden of proving that their purpose for inspection is improper.

¶ 41                                    II

¶ 42     The question then becomes whether judgment on the pleadings was properly entered in the Sisters' favor. We review that question *de novo*. *Pekin Insurance Co. v. Allstate Insurance Co.*, 329 Ill. App. 3d 46, 49 (2002). "Any party may seasonably move for judgment on the pleadings." 735 ILCS 5/2-615(e). In considering judgment on the pleadings, the court may only consider the face of the pleadings, matters subject to judicial notice, and judicial admissions. *Gillen v. State Farm Mutual Automobile Insurance Company*, 215 Ill. 2d 381, 385 (2005). A motion for judgment on the pleadings determines "whether there is an issue of fact or whether the controversy can be resolved as a matter of law." *Pekin*, 329 Ill. App. 3d at 49. Judgment on the pleadings is only proper where "the pleadings disclose no genuine issue of material fact." *Gillen*, 215 Ill. 2d at 385. The denial of an allegation or a well-pleaded affirmative defense precludes judgment on the pleadings where they raise an issue of material fact. *Continental Casualty Company v. Cuda*, 306 Ill. App. 3d 340, 347 (1999).

¶ 43     For the reasons we have just explained above, the Sisters have a presumptive right to inspect the corporate documents here, a right that can be denied only if the Brothers carry their burden of demonstrating that the Sisters' purpose for the inspection is improper or illegitimate. So the first question is whether the Brothers have raised the claim of an improper purpose.

¶ 44     They have. In their affirmative defenses to the writ, the Brothers assert, among other things, that "[t]his litigation was commenced for the sole and exclusive purpose of forcing the [Brothers] to either purchase the Plaintiffs' stock at an excessive premium, or forcing the Corporation to liquidate, close its doors and put over 100 employees out of a job." They allege that the Sisters "brought this action in an attempt to leverage a buyout of their shares of the Corporation at a higher value than is appropriate" and that they have "made numerous

overbroad, unduly burdensome and disproportionate requests for documents for the sole purpose of harassing [the Brothers] and not for a good faith purpose" in their roles as Directors of the Corporation. The Brothers have adequately pleaded that the "object and purpose" of the inspection "was not legitimate," that it was unrelated to performing their roles as directors, and that it was intended to "injure the corporation." *Stone*, 165 Ill. at 206.

¶ 45 Granted, they did so in a somewhat clunky fashion. They styled their claims under the affirmative defense of "unclean hands." But at the pleading stage, we have never exalted form over substance. "No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." 735 ILCS 5/2–612(b) (West 2016). Courts should not view pleadings as technical obstacles but, instead, should construe them liberally to do substantial justice between the parties. *Papadakis v. Fitness 19 IL 116, LLC*, 2018 IL App (1st) 170388, ¶ 21. The purpose of pleadings is to inform the court and the parties " 'of the legal theories relied upon and to give notice of the factual issues which are to be tried.' " *Id.* (quoting *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 335 (1997)).

¶ 46 The Brothers' answer and affirmative defenses accomplished that mission. The Sisters clearly understand, in factual detail, what the Brothers are alleging regarding their allegedly improper purpose in seeking inspection of the books and records.

¶ 47 In *Stone*, 165 Ill. at 206, 46 N.E. 222, the supreme court affirmed a demurrer to the corporation's answer, finding no question of fact presented on the pleadings. But there, the director had laid out in exquisite detail the conflicts of interest and self-dealing that led him, as a concerned director (and major shareholder), to seek inspection of the corporate books. And the corporation's only response was, in essence, that the director was only allowed to see certain

things, he already saw them, and he was just trying to find a way to hurt the company. *Id.* at 205-06, 46 N.E. 222; see also *Stone*, 62 Ill. App. at 460. That was a clearly insufficient rebuttal.

¶ 48    Here, in contrast, the Brothers have pleaded factually specific allegations that the Sisters have been holding out for more money for their shares and are using this rather ambitious inspection demand as a cudgel to get that better offer. Given the liberality with which we interpret pleadings, interpreting them in the light most favorable to the pleader and drawing all reasonable inferences in its favor, we cannot say that the Brothers' defense is invalid as a matter of law at the pleading stage, as did the court in *Stone*.

¶ 49    But we emphasize that we express no opinion on the merits of the Brothers' defense. The Brothers will have the burden of proving that the Sisters' purpose for the inspection demand was to threaten the viability of the entire company and/or to coerce the Brothers into capitulating on the Sisters' demand for a higher price for their shares of stock. It is not altogether clear to us how asking the company to open its warehouse for the inspection of documents would threaten the company's very existence, but the Brothers will have an opportunity to prove that. Nor have we heard from the Sisters on the merits of this defense; as we have explained, they had no obligation on the front end to plead a proper purpose, and they have not done so. The Sisters, in arguing against the Brothers' defense, may articulate a valid purpose of their own for inspection as well as attacking the purpose attributed to them by the Brothers. It is far too early for us to take sides in this factual dispute. We hold only that, at the pleading stage, we cannot say that the Brothers' defense of improper purpose is insufficient as a matter of law.

¶ 50    As a question of fact exists as to whether the Sisters had a proper purpose for their inspection demand, judgment on the pleadings in the Sisters' favor was error. *Gillen*, 215 Ill. 2d at 385; *Cuda*, 306 Ill. App. 3d at 347. We vacate that ruling and remand for further proceedings.

¶ 51                                    III

¶ 52    Because we are remanding, we should address the question of the affirmative defense of unclean hands. We have just held that two allegations contained within that affirmative defense were more properly cast as claims of improper purpose. Nothing we say here changes that. But the remainder of that defense, pleaded in two separate counts, was properly stricken.

¶ 53    The "unclean hands" doctrine is grounded in the principle that "he who seeks equity must do equity," and a party should not be allowed to profit from its own wrongdoing. *In re Estate of Opalinska*, 2015 IL App (1st) 143407, ¶ 32; *Gambino v. Boulevard Mortgage Corp.,* 398 Ill. App. 3d 21, 60 (2009). That is, a party who has been guilty of misconduct, fraud, or bad faith in connection with the matter in dispute may not seek equitable relief from the court and thereby enlist the court's aid in furthering that wrongdoing. *Jackson v. Board of Election Commissioners of City of Chicago*, 2012 IL 111928, ¶ 26.

¶ 54    That's where the remainder of the unclean-hands defense asserted here runs into a problem—the plaintiff's wrongdoing comprising the unclean-hands defense must be directly related to the plaintiff's request for relief in the case before the court. *Id*. Imagine a plaintiff who fraudulently induces the defendant to sign a contract, then sues that defendant for payments on that very contract. Or an insured who lies about her health on an insurance policy, then once the insurer becomes the wiser and revokes the policy, sues to collect interest on the premiums paid to date. See *Long v. Kemper Life Insurance Co.*, 196 Ill. App. 3d 216, 219 (1990). In those examples, the plaintiff seeks to profit from wrongdoing directly related to the case.

¶ 55    But it's not enough to claim that the plaintiff did something else wrongful, in another (even related) context; a nexus must exist between the wrongdoing and the relief sought in court. For example, if a plaintiff buys real property but fails to record it because he wants to avoid

housing-code fines, he is not later barred from an action to quiet title on the property, because his wrongdoing in not recording the title had nothing to do with the separate purchase contract with the defendants. See *Cole v. Guy*, 183 Ill. App. 3d 768, 776-77 (1989).

¶ 56    Nor is an heiress equitably barred from inheriting her murdered mother's estate, even though she committed perjury and obstruction of justice during the police's homicide investigation, because the heiress "stood to inherit her mother's estate regardless of whether she cooperated with the law enforcement and the grand jury. If she receives her mother's estate, it will not be because of her acts of perjury and obstruction of justice." *Estate of Opalinska*, 2015 IL App (1st) 143407, ¶ 33. Citing bad acts by the plaintiff, alone, is not enough. The plaintiff must be viewed as using the court as a vehicle to profit from that very wrongdoing.

¶ 57    Here, aside from the allegations of improper purpose we already discussed, the affirmative defense cites the following allegations of wrongdoing by the Sisters:

> (1) Mrs. Munroe-Diamond, one of the sisters, has borrowed $77,340.40 from the corporation and not repaid it;
>
> (2) The other sister, Mrs. Sharkey, after initially voting as directors to redeem minority shares at $1,522 per share, "helped lead an off-site meeting with several of the minority shareholders in an effort to persuade them to reject the $1,522 per share offer and hold out for a higher offer;" and
>
> (3) After the corporation upped its offer to $1,660 per share, the Sisters "were the only minority shareholders who chose not to redeem their shares."

¶ 58    Munroe-Diamond's alleged debt to the corporation has nothing to do with her entitlement to review the corporate books and accounts. Nor does the fact that Sharkey organized a meeting to discuss the original redemption offer. Likewise, the fact that the Sisters turned down the initial

and upgraded offers to redeem their shares, by itself, is irrelevant to their right to demand inspection of corporate records in their capacity as directors of the corporation. Some of these claims might make for nice factual background for the claim of improper purpose, but they are not freestanding, independent acts constituting unclean hands and were properly stricken.

¶ 59                                                    IV

¶ 60    Finally, we briefly address the Brothers' mootness argument, typically an issue we would address preliminarily, but an understanding of the relevant legal doctrines was helpful background to cast this argument in its proper light.

¶ 61    "A *mandamus* petition will be dismissed as moot if no actual rights or interests of the parties remain or if events occur that make it impossible for the court to grant effectual relief to either party." *Jackson v. Peters*, 251 Ill. App. 3d 865, 867 (mandamus claim was moot because visitation privileges sought were restored prior to dismissal of claim). But that was not the state of affairs in the trial court.

¶ 62    The Brothers say they complied with the interim order issued by the court, that "in the weeks that followed" its entry, they acted "in full compliance with the Interim Order" and cooperated with the Plaintiffs to provide them the access to the Corporation's books and records as requested." Maybe so, but that interim order did not grant the Sisters the full access they sought. Part of what they received was simply knowing where and how certain records were stored. And the Brothers offered several years' worth of certain information, claiming that the Sisters couldn't possibly need or want more than that. But the Sisters do, in fact, want more. And unlike shareholders, who have statutory limitations on what they can inspect, directors have no such limitation—provided they can defeat a claim of improper purpose.

¶ 63 The Brothers' argument is not unlike the argument made by the corporation in *Stone*, that it complied with Kellogg's request by giving him everything to which the corporation believed Kellogg was lawfully entitled. *Stone*, 165 Ill. at 205-06; *Stone*, 62 Ill. App. at 460. We rejected the notion that the corporation could decide for itself "how much of the records and affairs of the company all or any of its directors may legitimately 'know.' " *Stone*, 62 Ill. App. at 461. We do so here, as well. The Sisters' claims were not and are not moot.

¶ 64                                   CONCLUSION

¶ 65 The order entering judgment on the pleadings is vacated. The order striking the "unclean hands" defense is affirmed in part and reversed in part. The cause is remanded for further proceedings.

¶ 66 Vacated in part, affirmed in part, reversed in part; remanded.